THE NEW YORK CENTRAL RAILROAD COMPANY, AND THE COMPANIES COMPRISING ITS SYSTEM, PROSECUTOR, v. STATE DEPARTMENT OF TAXATION AND FINANCE, DIVISION OF TAX APPEALS, HOMER C. ZINK, STATE COMMISSIONER OF TAXATION AND FINANCE OF NEW JERSEY, AND FRANK E. WALSH, DIRECTOR, DIVISION OF TAXATION OF THE STATE OF NEW JERSEY, DEFENDANTS.

ERIE RAILROAD COMPANY, PROSECUTOR, v. STATE DEPARTMENT OF TAXATION AND FINANCE, DIVISION OF TAX APPEALS, HOMER C. ZINK, STATE COMMISSIONER OF TAXATION AND FINANCE OF NEW JERSEY, AND FRANK E. WALSH, DIRECTOR, DIVISION OF TAXATION OF THE STATE OF NEW JERSEY, DEFENDANTS.

Argued May 5, 1948—Decided June 18, 1948.

Before Justices DONGES, COLIE and EASTWOOD.

For the prosecutor The New York Central Railroad Company, and the companies comprising its system, *O'Mara, Conway & Schumann (Joseph A. Davis*, of counsel).

For the prosecutor Erie Railroad Company, *Markley & Broadhurst (Edward A. Markley* and *Raymond J. Lamb*, of counsel).

For the defendants, *Walter D. Van Riper*, Attorney-General of New Jersey, *Benjamin C. Van Tine* and *Benjamin M. Taub*, Deputy Attorneys-General.

The opinion of the court was delivered by

EASTWOOD, J.   Writs of *certiorari* have been allowed in the above matters to review assessments made by the Director

of the Division of Taxation, State Department of Taxation and Finance, against The New York Central Railroad Company, and the companies comprising its System, for the year 1945, upon certain floating equipment, consisting of ferry boats, tugs, lighters, &c., at a valuation of $1,292,321. Like action was taken by said Director on levying an assessment against Erie Railroad Company for the year 1945, upon similar floating equipment, at a valuation of $1,697,355. The assessments complained of were levied pursuant to the provisions of the Railroad Tax Law of 1941, *Pamph. L.* 1941, *ch.* 291; *R. S.* 54:29A–1, *et seq.* An appeal from said assessments was taken to the Division of Tax Appeals, which, by its judgment entered on December 4th, 1946, dismissed both appeals. The matter is now before us on *certiorari* to determine the validity of that determination. No review of the assessments on main stem and second class lands has been asked in the writs and we, therefore, confine ourselves solely to the issue of the assessments on the floating equipment.

From the record the following facts emerge. Both the Erie Railroad Company and The New York Central Railroad Company, which will hereafter be refererd to as Erie and New York Central, respectively, are corporations formed under the laws of the State of New York. They own and operate ferry boats, tugs, lighters and other craft on the waters of New York harbor between New York City and Jersey City, as well as in the immediate vicinity. The floating equipment is employed by the Erie and The New York Central for the transporting of passengers and freight in both directions across the Hudson River. The ferry boats, tug boats and steam and Diesel lighters are self-propelled and the freight-carrying equipment consisting of car floats, closed barges, open barges, lighters and other craft are largely non-self-propelled and are moved from place to place by tug boats. All of the self-propelled craft were registered with the United States Customs Service at the Port of New York and have New York as their home port. The non-self-propelled craft are not registered and are not required so to be. Both companies have been so engaged in transporting passengers and freight for many years. Prior to the year

1945, no tax was assessed by the defendant Director or his predecessors against said equipment. For that year, the assessments complained of were levied under the applicable provisions of the Railroad Tax Law of 1941, appearing in *R. S.* 54:29A–9, which reads as follows:

"54:29A–9. Movable property.

"Tangible personal property which is used or kept but a part of the time in this State by any railroad shall be assessed such proportionate part of its value as the time it is used or kept in this State during the calendar year preceding bears to the whole year."

The assessment was made on a fifty per cent. basis, apparently on the theory that the floating equipment of both the Erie and the New York Central acquired a tax *situs* in New Jersey for at least that proportion of the entire taxable year.

The facts are not greatly in dispute, nor are the percentages used by the state in apportioning the tax challenged to any degree. The constitutionality of the Railroad Tax Law of 1941 likewise remains unchallenged, and its validity is by implication admitted. The challenge is that the state has no legal right to levy any tax against said floating equipment because of the nature of the tangible personal property involved, *i. e.*, that the floating equipment is owned by corporations of the State of New York, and as such has its domicile and tax *situs* solely in New York. *Per contra*, the state contends that said floating equipment, although owned by foreign corporations, is based in New Jersey and goes into the tidal waters of the State of New York merely in the course of interstate commerce.

It appears from the record that the ferry boats owned by Erie were in New Jersey tidal waters sixty-nine and one-half per cent. of the time, the tug boats forty-seven per cent. of the time, and the other floating equipment at least forty per cent. of the time during 1944, which formed the basis for the 1945 assessment. The ferry boats, tug boats, steam lighters and car floats owned and operated by New York Central were in New Jersey tidal waters during fifty per cent. of the time, the barges, scows, lighters and hoists approximately fifty per cent. of the time, the coal and pumping

barges ninety per cent. of the time, and the oil barges prac-tically seventy-five per cent. of the time. The foregoing per-centages represent total time and not percentages of the working day. All of the non-working time of the various types of floating equipment is spent in the terminal and repair yards in the State of New Jersey. Erie has in use five ferry boats, it being that company's practice to rotate the five boats in service, using four of the five boats regularly and keeping the fifth boat for reserve. The boat so held in reserve is tied up at all times at Erie's New Jersey terminal. It was testified that the car floats and barges of Erie were considered a part of the Jersey City terminal yards. The ferry boats of New York Central, when not in service, are tied up at the Weehawken, New Jersey, ferry slips, or at the repair shop "about a mile up from pier No. 2" on the New Jersey side. The same is true of all of New York Central's other floating equipment. The spare time of all such equip-ment is spent in either the New Jersey terminals or under-going repairs about a mile up from pier No. 2 on the New Jersey side. The floating equipment in question visits the State of New York only in the course of interstate commerce.

We are urged to set aside the assessments on the ground that the floating equipment in question has a tax *situs* in New York, the domiciliary state, upon the theory that such tax *situs* is established as a matter of law by reason of the fact that they are foreign corporations, incorporated under the laws of New York. This proposition is disputed by the state and we are told that domicile does not of itself create a tax *situs*. We are in accord with this contention. In *Old Dominion Steamship Co.* v. *Virginia,* 198 *U. S.* 299, the United States Supreme Court had before it for review a judgment of the Supreme Court of Appeals of the State of Virginia, affirming a finding of the state corporation com-mission declaring taxable, under the laws of the state, certain vessels belonging to a foreign corporation, registered or en-rolled at a port outside of the limits of the state, and em-ployed in interstate commerce wholly within the limits of the state. In affirming the judgment of the state court, and upholding the tax, the Supreme Court, speaking through Mr. Justice Brewer, had this to say:

"The general rule is that tangible personal property is subject to taxation by the State in which it is, no matter where the domicil of the owner may be. This rule is not affected by the fact that the property is employed in interstate transportation. *Pullman's Palace Car Co.* v. *Pennsylvania*, 141 *U. S.* 18, in which Mr. Justice Gray, speaking for the court, said (at *p.* 23):

" 'It is equally well settled that there is nothing in the Constitution or laws of the United States which prevents a state from taxing personal property, employed in interstate or foreign commerce, like other personal property within its jurisdiction.' * * *

"This is true as to water as well as to land transportation."

In *Old Dominion Steamship Co.* v. *Virginia*, the contention was made, as here, that the vessels were not subject to state taxation in the non-domiciliary state, and that they were taxable only at the port in which they are enrolled or registered, citing *Hays* v. *Pacific Mail Steamship Co.*, 17 *How.* 596; 15 *L. Ed.* 254, and *Morgan* v. *Parham*, 16 *Wall.* 471; 21 *L. Ed.* 303. In dismissing this contention Mr. Justice Brewer commented.

"* * * there is no suggestion in the statutes that vessels registered or enrolled are exempt from the ordinary rules respecting taxation of personal property. It is true by (paragraph 4141 of *U. S. Com. Stat.* 1901, 2803 and 2959, providing for registry and enrollment) there is created what may be called the home port of the vessel, an artificial *situs*, which may control the place of taxation in the absence of an actual *situs* elsewhere, and to that extent only do the two cases referred to go." (Parenthesis ours.)

It is likewise clear from the cases that a vessel which never touches the state of domicile does not lose its tax *situs* in that state by visiting even the port of registry, if such visit is merely in the course of interstate commerce. See *Southern Pacific Co.* v. *Kentucky*, 222 *U. S.* 63, where boats operating between New York and California and registered in New York were held to be taxable in Kentucky, and not New York. See, also, *Ayer & Lord Tie Co.* v. *Kentucky*, 202 *Id.* 409, where the settled rule was held to be that the domicil

of the owner or .the actual *situs* of the vessel, and not the place of enrollment of a vessel plying between ports of different states, is the criterion by which the *situs* of the vessel for taxation is determined.

From the foregoing it is apparent that it is the general rule that the power of the state to tax is limited to subjects within its jurisdiction over which it can exercise dominion. The rule is clear, but difficulty some times exists in particular cases in determining the *situs* of personal property for purposes of taxation. No difficulty can exist in applying the general rule in this case. The facts reveal that the floating equipment, although owned by corporations of New York and registered in that state, nevertheless, ·have acquired a taxable *situs* in New Jersey, and had such taxable *situs* during the year 1945. The question of *situs* is a factual one to be determined from the facts of the given case, and we are convinced that the facts here clearly show that the floating equipment in question does not come into New Jersey merely in the course of interstate commerce but, in addition, remains here in its idle time, is repaired here, and for all practicable intents and purposes has its permanent home in this state. This being so, it has definitely acquired a tax *situs* in New Jersey. The maintenance of elaborate terminal facilities, the daily use of these facilities for berthing the floating equipment during non-working period, and the repair accommodations established for said floating equipment all go to spell out the fact that the floating equipment in question is permanently within the jurisdiction of New Jersey for purposes of taxation. As succinctly stated by the defendants, "New Jersey is its home."

Prosecutors cite ·the case of *State* v. *Haight,* 30 *N. J. L.* 428, as authority for their contention that the floating equipment was not properly taxable in New Jersey. Our perusal of that decision leads us to conclude that the facts therein prevailing and those in the matter before us are in nowise comparable. In *State* v. *Haight* it was found as a matter of fact that the ferry boats of the New York and Erie Railroad Company had no permanent location at Jersey City "except that they lie at, and are fastened to the piers on this

side, long enough to deliver and receive their passengers and freight, or to wait for their arrival, and in a few instances, one or more of them have remained on this side long enough to receive repairs." It is thus apparent that in *State* v. *Haight* the proof of permanency of the *situs* in New Jersey was not established. Here, however, the floating equipment by reason of the duration of time spent in New Jersey, both while at work and while tied up for repairs and during non-working hours, had acquired a permanency of *situs* which we deem was amply sufficient for the purpose of creating a definite *situs* for taxation purposes.

We are urged to set aside the assessments on the grounds that New Jersey has surrendered its right to tax the property in question by reason of an agreement of 1833 between New Jersey and New York, whereby the State of New Jersey ceded its sovereignty over the waters of New York harbor to the State of New York. We hold this contention to be without merit, and disposed of by the decisions in *Central Railroad Company of New Jersey* v. *Jersey City,* 70 *N. J. L.* 81; *affirmed,* 72 *Id.* 311, and *Tennant* v. *State Board of Taxes and Assessments,* 95 *Id.* 465; 113 *Atl. Rep.* 254. The import of these decisions is that such jurisdiction as may have been surrendered to New York was simply for the exercise of the police power, and did not affect the sovereign power of taxation vested in the State of New Jersey.

We have considered all of the other arguments advanced by the prosecutors in support of their several contentions and find them to be without merit.

For the foregoing reasons we conclude that said assessments, made against the floating equipment of the prosecutors for the tax year 1945, were legal and valid and the judgment of the Division of Tax Appeals dismissing the appeals was proper.

The writs will be discharged, with costs.