20 N.J. Super. 487 (1952)
90 A.2d 58
GEORGE M. BREWSTER & SON, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
BOROUGH OF BOGOTA AND THE ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS, AND TOWNSHIP OF WESTAMPTON AND TOWNSHIP OF MOUNT LAUREL, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 26, 1952.
Decided July 3, 1952.
*489 Before Judges McGEEHAN, JAYNE and GOLDMANN.
Mr. Robert W. Criscuolo argued the cause for appellant Township of Westampton (Mr. Bayard Allen, attorney; Messrs. Parker, McCay & Criscuolo, of counsel).
Mr. Benjamin Marmer argued the cause for appellant Township of Mount Laurel.
Mr. James A. Major argued the cause for respondent George M. Brewster & Son, Inc. (Messrs. Major & Carlsen, attorneys).
Mr. Irving C. Evers argued the cause for respondent Borough of Bogota (Mr. Walter H. Jones, attorney).
The opinion of the court was delivered by GOLDMANN, J.A.D.
Plaintiff sought a declaratory judgment (R.S. 2:26-66 et seq., R.S. 2:26-69; now N.J.S. 2A:16-50 et seq., N.J.S. 2A:16-53) of its rights and status under the statute concerning the assessment of tangible personal property (R.S. 54:4-9, as amended L. 1942, c. 281, § 2; L. 1943, c. 120, § 2; L. 1945, c. 163, § 3), and more particularly whether the Townships of Westampton and Mount Laurel in Burlington County, New Jersey, had the right to assess and tax plaintiff's equipment and machinery for the year 1951.
The facts were not in dispute and the cause was by consent submitted to the trial court sitting without a jury. That *490 court determined that neither township could under the statute legally assess plaintiff's property present therein on October 1, 1950, and that only the defendant Borough of Bogota had such right, the taxable situs of the equipment and machinery on the assessing date being in that borough. Judgment was entered for the plaintiff. The defendant townships appeal.
Plaintiff is a large contracting company specializing in the construction of roads, bridges, aqueducts and similar public works. It was incorporated in the State of New Jersey in 1923 and has its principal executive and registered offices, plant, main repair shops, garage, and facilities for storing its equipment and machinery in Bogota, Bergen County, New Jersey.
Early in 1950 the New Jersey Turnpike Authority awarded three contracts to plaintiff covering section 3 of the Turnpike, extending from Allentown in Monmouth County to Woodbury in Gloucester County, a distance of 21.7 miles. These contracts were for grading, bridge work and paving, respectively. Part of section 3 runs through the Townships of Westampton and Mount Laurel, Burlington County.
The equipment necessary to carry out the Turnpike work was all mobile and ran on tires or treads. It was assembled in Bogota in February, 1950, and shipped to the job. There was a delay of two months because of difficulties encountered by the Turnpike Authority in acquiring necessary rights-of-way, as a result of which most of the equipment was moved back to Bergen County and used there until May, 1950. The equipment was then forwarded to the job site and the work began. It is stipulated that the equipment assessed by the Townships of Westampton and Mount Laurel on October 1, 1950, was physically located there for the purpose of being used on the Turnpike project, and was to remain there until the work was completed and then taken elsewhere.
The equipment and machinery were moved from place to place as the work on section 3 of the Turnpike progressed. It is uncontroverted that when plaintiff completes a contract *491 the equipment and machinery used are either returned to Bogota for storage or repairs or, if no repairs are necessary and there is a new job available, are transported to the new job location.
The Turnpike contracts called for completion of the job on the entire 21.7-mile length of section 3 by October 1, 1951. However, because of some delay the target date for completion was November 1, 1951.
R.S. 54:4-1, as amended (N.J.S.A. 54:4-1), provides that:
"All property real and personal within the jurisdiction of this State not expressly exempted from taxation or expressly excluded from the operation of this chapter shall be subject to taxation annually * * * at its true value, and shall be valued by the assessors of the respective taxing districts. * * * Personal property taxable * * * shall include, however, only tangible goods and chattels * * *. All property shall be assessed to the owner thereof with reference to the amount owned on October first in each year, * * *."
R.S. 54:4-9, as amended (N.J.S.A. 54:4-9), provides
"The tax on all tangible personal property in this State shall be assessed in and for the taxing district where the property is found."
R.S. 54:4-12 and 16, as amended (N.J.S.A. 54:4-12 and 16), gives the local assessor plenary power to ascertain the ownership and value of taxable personal property within the taxing district.
All of plaintiff's equipment and machinery has regularly been assessed and taxed by the Borough of Bogota. Plaintiff is concerned not only with the conflicting claims of the defendant municipalities to tax its equipment and machinery, but also with the probability of other taxing districts claiming the right to tax equipment and machinery used on the Turnpike project. It has joined as parties defendant the Townships of Westampton and Mount Laurel and the Borough of Bogota, as well as the Attorney-General of New Jersey because the construction of a statute is involved and plaintiff deems him a necessary party. By way of separate defense the *492 Township of Mount Laurel averred that the October 1, 1950 assessment was on "visible, tangible personal property of the plaintiff which was found in the Township of Mount Laurel on said date, in conformity with Revised Statutes of New Jersey 54:4-9. * * * No other municipality has the right to tax said property for the year 1951."
Both townships argued below that the mere physical presence of plaintiff's equipment and machinery within their borders on the assessing date was sufficient to sustain the assessment made by their assessors. Mount Laurel has abandoned that view on this appeal. It now argues that the tangible personal property in question was subject to assessment "since it had acquired a tax situs in said township on the assessment date, which tax situs was distinct from the plaintiff's domicile." Westampton Township, however, continues to adhere to its position below. It states the basic question involved on this appeal in this fashion:
"Should personal property be assessed and taxed in the taxing district where it is physically located on October 1 when the property is temporarily being used in the taxing district in prosecution of the owner's business?" (Italics ours.)
In the absence of any statute to the contrary, and of anything to show that it has acquired an actual situs elsewhere, the general rule is that for purposes of taxation tangible property has its situs at the domicile of the owner. Most of the decisions dealing with the application of this rule and with other relevant principles about to be mentioned, involve taxation as between different states. However, substantially the same rules prevail as between different taxing districts in the same state. Sayles v. Los Angeles County, 59 Cal. App.2d 295, 300; 138 P.2d 768, 770 (Dist. Ct. App. 1943).
The applicable principle as to the situs of tangible personal property for tax purposes is succinctly stated in 51 Am. Jur., Taxation:
"As between taxing units within the state, tangible personal property is ordinarily taxable to the owner in the county, town, municipality, *493 or other taxing district in which the owner has domicil if the property has not acquired a taxable situs elsewhere, and in the case of property owned by a corporation, at the place where the principal business of the corporation is transacted. * * *" (§ 451, p. 466)
"* * * An assessment of personal property in any other state or county than the one in which the owner resides is proper only when it appears that the property is being, to some extent, kept and maintained in such state or county, and is not there casually, nor in transition, nor temporarily, in the ordinary course of business or commerce." (§ 448, p. 463)
And see 2 Cooley, Taxation (4th ed. 1924), § 440, p. 957; § 451, p. 978.
Before tangible personal property may be taxed in a taxing district other than that of the owner's domicile, it must have acquired a more or less permanent location in that district, and not merely a transient or temporary one. The taxing district of origin remains the permanent situs for tax purposes notwithstanding occasional excursions of such property to foreign parts. Commonwealth v. American Dredging Co., 122 Pa. 386, 15 A. 443, 1 L.R.A. 237 (Sup. Ct. 1888). Brock & Co. v. Board of Supervisors of Los Angeles County, 8 Cal.2d 286, 65 P.2d 791, 110 A.L.R. 700 (Sup. Ct. 1937).
The concept of "permanence" as related to tax situs is difficult of definition. It does not embrace the idea of the forever fixed location of real estate, or the idea that an owner, on bringing personal property within the taxing district, has no present intention of ever removing it. On the other hand, it excludes the idea of mobile personal property which happens to be in the course of transit through the taxing district at the moment of assessment. Similarly, it excludes the idea of property which for some definite purpose of its owner has come to rest within the boundaries of the taxing district for a limited time. Cooley, in discussing permanency of location, notes that
"* * * the word `permanently' is apt to be misleading unless read in connection with the facts of the particular case. It means a more or less permanent location for the time being. It is impossible to lay down any general rule fixing the length of time or *494 degree of permanency necessary to establish a taxable situs in the state." Cooley, Taxation (4th ed. 1924), § 452, p. 988.
The ownership and uses for which the property is designed, and the circumstances of its being in the taxing district are the determinants of permanence. The varying pattern of these factors and the importance which they respectively assume in particular cases serve to differentiate the many decisions on the subject. 110 A.L.R. 707 et seq.
The question of tax situs of tangible personal property is often more a question of fact than one of law. The facts here are not in dispute; we have the uncontroverted testimony of plaintiff that its equipment and machinery were temporarily in the defendant townships on October 1, 1950, for the limited purpose of carrying out construction work on that part of section 3 of the Turnpike traversing those municipalities. Further, we have the stipulation that the property was to remain on location only as long as needed, and then taken elsewhere. The question of tax situs, therefore, is here purely one of fact. N.Y. Central R.R. Co. v. Department of Taxation and Finance, 137 N.J.L. 288, 294 (Sup. Ct. 1948), affirmed 1 N.J. 298 (1949); Sayles v. Los Angeles County, above.
The word "found" as used in the statute (R.S. 54:4-9, as amended) cannot mean, as the defendant townships argued below and as Westampton still maintains here, "physically present" within the taxing district, without more. The local assessor is not free to adopt the dictionary meaning of the word, "discovered by sight, touch, taste or any other sense, whether unexpectedly or by searching"; otherwise he could assess any and all tangible personal property present in his taxing district on October 1 upon which his eye might light. The law will not subscribe to such a see-and-tax policy. The language of the court in State v. Haight, 30 N.J.L. 428, 429-430 (Sup. Ct. 1863) is appropriate:
"* * * The establishment of the principle contended for by the assessor in this case would seem to authorize him in assessing everything *495 that he can find within his official limits at any time while making his assessments; which would render it unsafe for a stranger to our soil to visit it with his property during that time. The law does not contemplate any such thing. It is only intended to tax such personal property of foreigners, as is actually located or used within the state with something like permanency, and not having its actual location or home somewhere else."
Accordingly, assessment of plaintiff's property by the defendant townships merely because it was "temporarily being used in the taxing district in prosecution of the owner's business," to quote from the "Statement of Question Involved" in Westampton Township's brief, finds no justification in law and cannot be sustained.
It may be noted that if the contention of Westampton Township were sound, owners of tangible personal property might in practice be subjected to double taxation. This is an injustice which has often been recognized and deprecated by the courts. It is not to be presumed that the Legislature intended that property within the borders of New Jersey might twice be taxed. The presumption is the other way; it is to be presumed that the Legislature contemplated an integrated tax system. Further, if the townships' view were to prevail, it would be entirely possible for the owner of tangible personal property to avoid payment of taxes by temporarily removing it from his tax district just before the assessment date to some rural spot, or even beyond the state borders to some other state or onto the high seas. The hope would always be that the assessor in such other place would not "find" the property in his district. Brock & Co. v. Board of Supervisors of Los Angeles County, above, is an example of such an attempt, unsuccessfully made. Such adroit manoeuvering is not unknown to assessors in some of our taxing districts.
The question now raised by Mount Laurel Township remains: Did plaintiff's equipment and machinery acquire a permanency of situs in either township so as to legally justify assessment by the local assessors on October 1, 1950? Under the uncontroverted facts of this case, they did not.
*496 Mount Laurel Township argues that because plaintiff's contracts with the Turnpike Authority, signed early in 1950, had October 1, 1951, as their completion date, the property in question acquired a tax situs in the township. There is no evidence to support such conclusion. The contracts for section 3 of the Turnpike covered work to be done on a 21.7-mile stretch running from Allentown to Woodbury and traversing Mercer, Burlington and Camden Counties. Road-building is necessarily a progressive operation. First comes the rough work  excavating, filling and grading. Next comes the laying of the foundation and then the application of the paving surface, followed by smoothing. Culverts, bridges and similar structures must be built where necessary. Equipment and machinery suitable for one task would not be suitable for the next stage of construction. It must be obvious, therefore, that plaintiff's equipment and machinery were not set down in Westampton and Mount Laurel Townships in May, 1950, there to remain for the entire period of the contract. The tractors, loaders, trucks and other units moved the length of the Turnpike section as the work of road-and bridge-building progressed. No attempt was made on behalf of Mount Laurel Township to show that the identical equipment and machinery were present in the township throughout the entire period or that even one unit remained continually on the job there. The presence of plaintiff's property in the two townships was temporary in every sense of the word; such part of plaintiff's equipment and machinery as happened to be in either township on October 1, 1950, did not acquire a permanency of tax situs though visibly present there. The permanent situs of plaintiff's property for taxation purposes remained in Bogota, Bergen County, the "home" and base of plaintiff's operations. New York Central R.R. Co. v. Dept. of Taxation and Finance, State v. Haight, Brock & Co. v. Board of Supervisors of Los Angeles County, Sayles v. Los Angeles County, and Commonwealth v. American Dredging Co., above; Hays v. Pacific Mail S.S. Co., 17 How., U.S. 596, 15 L.Ed. 254 (1855) and Ayer & *497 Lord Tie Co. v. Kentucky, 202 U.S. 409, 26 S.Ct. 679, 50 L.Ed. 1082 (1906) (vessels); Rosasco v. County of Tuolumne, 143 Cal. 430, 77 P. 148 (Sup. Ct. 1904) (cattle); Joiner v. Pennington, 143 Ga. 438, 85 S.E. 318 (Sup. Ct. 1915) (portable saw mill); Capital Construction Co. v. Des Moines, 211 Iowa 1228, 235 N.W. 476 (Sup. Ct. 1931) (road-building machinery); Robinson v. Longley, 18 Nev. 71, 1 P. 377 (Sup. Ct. 1883) (circus).
The judgment below is affirmed, without costs.