104 N.J. Super. 45 (1968)
248 A.2d 547
CITY OF BAYONNE, DEFENDANT-APPELLANT,
v.
INTERNATIONAL NICKEL CO., INC., PLAINTIFF-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 12, 1968.
Decided December 13, 1968.
*46 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Nicholas A. Panepinto argued the cause for appellant.
Mr. Prospero DeBona argued the cause for respondent (Messrs. Milton, Keane & DeBona, attorneys; Mr. John B. Wefing, on the brief).
Mr. Arthur J. Sills, Attorney General of New Jersey, filed statement in lieu of brief on behalf of respondent Division of Tax Appeals (Mr. Charles H. Landesman, Deputy Attorney General, of counsel).
The opinion of the court was delivered by CONFORD, S.J.A.D.
The City of Bayonne appeals the cancellation by the Division of Tax Appeals of a personal property tax levied by its assessor for the tax year 1965 on personal property of International Nickel Co. The taxpayer possessed taxable personal property, used in its business, in the Bayonne taxing district on January 1, 1964, the assessing date for 1965 taxes, N.J.S.A. 54:4-11 (as amended by L. 1964, c. 141), but removed all of it from this State to the States of New York and West Virginia during the year 1964, so that none of it was in Bayonne on January 1, 1965 or thereafter.
The action of the Division was predicated on the theory that N.J.S.A. 54:4-1, providing for taxation of real and personal property "within the jurisdiction of this State," precluded the assessment for 1965 by a New Jersey taxing district of personal property which was physically beyond the borders of the State before the calendar year 1965 began. Bayonne contends that the status and location of the property on January 1, 1964, the statutory listing or assessing date *47 for the tax year 1965, controls as to Bayonne's right to impose the tax for that year. The taxpayer responds that Bayonne's construction of the tax statute would render it invalid as violative of the due process clause of the 14th Amendment to the United States Constitution.
Our careful consideration of the arguments of the parties and our independent research lead us to the firm conclusion that the taxing district's appeal must be sustained and the assessment restored. The legislative intention is that property found in the taxing district on the statutory assessing date is taxable therein for the corresponding tax year, although removed therefrom subsequent to the assessing date. Our tax statutes, as thus construed, do not offend due process even where the removal antedates the so-called tax year.

I
A review of the pertinent legislation should be preceded by the observation that beginning in 1960 there was in this State a period of intense public controversy over, and a number of legislative amendments of the law in respect of the taxation of tangible personal property, especially such as is used in business. See, e.g., Switz v. Kingsley, 37 N.J. 566 (1962); Zito v. Kingsley, 92 N.J. Super. 37 (App. Div. 1966). Detailed review of all of these enactments, several of which remained in suspension for varying periods of time, need not here be undertaken, as none of this legislation affects the basic principle we find to have characterized our tax law for decades, i.e., that the tax status of property, whether for purposes of exemption, valuation or assessing location, is fixed as of the assessing date, except where in some instances it has been specifically otherwise provided by the Legislature. See East Orange v. Palmer, 47 N.J. 307, 320-321 (1966).
N.J.S.A. 54:4-1, prior to amendment by L. 1960, c. 51, called for the taxation of "all property real and personal within the jurisdiction of this State [not expressly exempted *48 or excluded]" annually at its true value, and recited that "[a]ll property shall be assessed to the owner thereof with reference to the amount owned on October first in each year, and the person so assessed for personal property shall be personally liable for the taxes thereon."
N.J.S.A. 54:4-9, prior to the 1960 amendment, provided: "The tax on all tangible personal property in this State shall be assessed in and for the taxing district where the property is found."
The 1960 statute eliminated "true value" as the basis for assessment of tangible personal property and introduced a new classification of taxable personal property used in business. The assessing standard for the latter was to be "fair value," presumed to be the net book value of the property "as of the listing date." L. 1960, c. 51, §§ 4, 5. Later amendments provided for new and lower valuation bases and tax rates for assessment of various categories of tangible personalty used in business.
The assessing date for the new tax category of tangible personal property used in business was changed by L. 1960, c. 51, § 8 from the prior October 1 to the prior January 1, the act providing that January 1, 1961 "shall be the listing date with respect to taxes payable in the year 1962," and correspondingly for subsequent tax years. (For convenience we use the term "assessing date" rather than "listing date" herein.) This scheme was carried forward through the tax year 1965 and thereafter by L. 1964, c. 141, § 3 ("The taxable value shall be determined as of January 1, 1964, which shall be the listing date with respect to taxes payable in the year 1965," and correspondingly for subsequent tax years).
Insofar as concerns the place of taxation of tangible personal property used in business, the 1960 act (c. 51) retained the previous basic concept, and called for assessment thereof "at the general tax rate of the taxing district wherein such property is found, for the use of such taxing district." Section 7, amending R.S. 54:4-9. This concept as to the *49 place of taxation was continued in L. 1964, c. 141, above referred to, as was the long-existent rule of personal liability for such taxes of the "person lawfully assessed." (Section 1).
While apparently no New Jersey statute, past or present, can be found expressly to say, in so many words, that tangible personal property is assessable by that taxing district in which it is found on the assessing date, the whole tenor of the taxing statutes as of any given time in our modern history has spelled out that unmistakable intent. It was stated, for example, in Shillingsburg v. Ridgway, 69 N.J.L. 113 (Sup. Ct. 1903), that "visible personal property" is assessable at the place where found "on the day * * * for commencing the assessment" (a then-current paraphrase for "assessing date," "tax date," etc.). To the same effect, see Tennant v. State Board of Taxes and Assessments, 95 N.J.L. 465 (E. & A. 1921) (syllabus). This has, to our knowledge, been the practical construction accorded the statutes, over the years, by the taxing authorities of this State on every level, and we are aware of no challenge heretofore to the principle that the statutory assessing date controls the incidence of the legal place of assessment of tangible personal property (subject to qualifying principles as to nontaxable status of such property in the taxing district, as where only temporarily situated, or in transit in interstate or foreign commerce, etc., when found in such taxing district on the assessing date).
Indeed, we do not understand the taxpayer to challenge the foregoing, except in application to a case like this where the property in question has been removed from the state taxing jurisdiction prior to commencement of the calendar tax year. In such instance, so it is argued, the United States Constitution prohibits the levy even if the property was found there on the assessing date; consequently, the taxing statutes should be construed consonantly with the constitutional rule. We address ourselves to that argument.

*50 II
Preliminarily, we observe that in none of the cases cited by the taxpayer or the Division of Tax Appeals is there a square holding supportive of the position asserted. Indeed, we find no prior case in which a court has been asked to determine that property found in a state on the assessing date fixed by the statutes thereof in reference to a particular tax year is constitutionally untaxable by that state or its political subdivisions because not present therein during the tax year.
We deal first with the New Jersey decisions relied upon by taxpayer. It quotes from Bogota v. Brewster Equipment Co., 83 N.J. Super. 586 (App. Div. 1964):
"To allow Bogota to tax tangible personalty located in California, Utah, New York and Pennsylvania on October 1, 1959 and October 1, 1960 would result in a denial of due process of law  such property then being permanently located in those states and employed there in the prosecution of Brewster Company's business." (at p. 606: emphasis added)
The foregoing was written in reference to a holding that road construction equipment never within the boundaries of the State was not assessable by a New Jersey taxing district merely because the offices of the owner-corporation were situated there. It was held that the property in question was on the respective assessing dates physically located and intended for permanent use and disposal in other states  therefore had a taxable situs there and not in New Jersey. Actually, the reference to the assessing dates  October 1, 1959 and October 1, 1960  in the quoted excerpt from the Brewster opinion, is inferential that if the property were in New Jersey on the mentioned taxing dates, it would be assessable in this state[1].
*51 In N.Y. Central R.R. Co. v. State Dept of Taxation, etc., 137 N.J.L. 288 (Sup. Ct. 1948), cited by the Division and taxpayer, the court, while recognizing the general principle "that the power of the state to tax is limited to subjects within its jurisdiction" (at p. 294), was confronted only with the question whether floating equipment of the railroad taxpayer used for transportation of freight in the Hudson River and New York Harbor was validly taxed by New Jersey under the Railroad Tax Law of 1941, which provided for a formula of assessed valuation based upon proportionate time of presence of the equipment in this State. The court sustained the tax as against a contention that the sole taxable situs of the property was New York, where the owner corporation was domiciled. It is of present interest that there was no question raised concerning the validity of the statutory formula which based the proportionate valuation aforementioned on experience during the calendar year preceding the tax year[2]. In other words, the incidence of location of the property during the tax year was irrelevant to the validity of the assessment.
The leading federal decision for the proposition that a state's effort to assess property beyond its borders offends the due process rights of the taxpayer, and cited by the respondent herein, is D.L. & W.R. Co. v. Commonwealth of Pennsylvania, 198 U.S. 341, 25 S.Ct. 669, 49 L.Ed. 1077 (1905). The taxpayer was subjected by Pennsylvania to a corporate capital stock tax without allowing it a deduction for coal owned by the company which, by the time of the assessing period, referred to in the opinion as the "time the appraisement *52 was made"[3] (at p. 345, 25 S.Ct., at 669), had been transported out of the state and was being held by the taxpayer elsewhere awaiting sale to the company's customers. The United States Supreme Court held that the taxation of the capital stock was, in effect, a taxation of the company assets, including the coal in question, and therefore, to the extent that the assessed valuation reflected the value of tangible property beyond the borders of the state as of the time of statutory tax appraisal of the property, it constituted a taking of the taxpayer's property without due process of law. It is apparent from the court's analysis that, far from supporting the present taxpayer's position, the decision implies the contrary. It holds that the critical time for determining whether the property is constitutionally untaxable by the state because absent is the time as of which the statutory appraisal is to be made (in other words, the assessing date).
"Taking the different prices of the stock at different times in the year, and the average price thereof, and otherwise following the provisions of the statute, simply makes a way of finding the value of the stock between the 1st and 15th of November in each year. That is the material time when the value is to be ascertained, and at that time this coal was not in the state." (at pp. 357-358, 25 S.Ct., at p. 674).
It is to be noted that the result of the decision was that Pennsylvania lost the tax even though the coal, or part of it, was within its borders at some time or times during the tax year, for the sole reason that it was not present there as of the assessing date. For the same result, in a case where the assessing date was fixed at the beginning of the tax year, see Overstreet v. Ty-Tan, Inc., 48 So.2d 158 (Fla. Sup. Ct. 1950). The present Bayonne assessment accords with the rule of the D.L. & W.R. Co. case, since the property in question was in Bayonne on the assessing date.
*53 Other decisions of the United States Supreme Court cited by respondent for the constitutional rule espoused are not here helpful, since none of them involves any question concerning the determinative character of the statutory assessing date in relation to the absence of the taxed property from the taxing jurisdiction. See Norfolk & Western Railway Company v. Missouri State Tax Commission, 390 U.S. 317, 88 S.Ct. 995, 19 L.Ed.2d 1201 (1968); Frick v. Commonwealth of Pennsylvania, 268 U.S. 473, 45 S.Ct. 603, 69 L.Ed. 1058 (1925); Union Refrigerator Transit Co. v. Commonwealth of Kentucky, 199 U.S. 194, 26 S.Ct. 36, 50 L.Ed. 150 (1905).
In the closely analogous field of constitutional limitation of state taxing power in respect of goods being shipped in foreign commerce, both the courts and all the parties involved in Empresa Siderurgica, S.A. v. County of Merced, 337 U.S. 154, 69 S.Ct. 995, 93 L.Ed. 1276 (1949), affirming the decision of the California Supreme Court, 32 Cal.2d 68, 194 P.2d 527, 11 A.L.R.2d 934 (1948), assumed without question that the exempting export status of the property in question was to be determined as of the California statutory tax date (March 5, 1945, for the tax year 1945-1946) (337 U.S., at p. 155, 69 S.Ct. 995). It is further significant that the property held taxable by California because not in course of transit as of the tax date was entirely out of the state on an ocean carrier well before the end of the tax year. (337 U.S., at p. 155, 69 S.Ct. 995).
Nor is respondent's thesis aided by other out-of-state cases it cites. In Brock & Co. v. Bd. of Sup'rs of Los Angeles County, 8 Cal.2d 286, 65 P.2d 791, 110 A.L.R. 700 (Sup. Ct. 1937), the court rejected a jeweler's appeal from a 1935 assessment by the county on part of his jewelry stock-in-trade which he had transported to Hawaii prior to the "tax date" (March 4, 1935) and brought back to Los Angeles soon after that date. The purposes of the trip were concededly two: (a) to show the articles to potential customers *54 in Hawaii and (b) to evade taxation on the property for the year 1935. The taxpayer's argument was that the motive of removal was irrelevant  the property was excluded from taxation because absent from the state on tax day. The rejection of that position by the court, like the reasoning in our own decision in George M. Brewster & Son, Inc. v. Borough of Bogota, supra, n. 1, was that the removal of the goods from their permanent Los Angeles situs was merely temporary, and thus insufficient to transfer their taxable situs. It is not our position in the instant case that mere presence of personal property within a state at the assessing date is determinative of taxability therein. The presence must be of a permanent character as of that date, as was the case with the present respondent's property as of January 1, 1964.
In Commonwealth v. Westinghouse Air Brake Co., 251 Pa. 12, 95 A. 807 (Sup. Ct. 1915), also cited by respondent, the significance of the assessing date was not an issue. The case simply follows the general, undisputed rule precluding taxation of property permanently beyond the borders of the taxing state.
The controlling significance of the assessing date was adjudicated in Overstreet v. Ty-Tan, Inc., supra, and also in Stebco, Inc. v. Gillmouthe, 189 Or. 427, 221 P.2d 914 (Sup. Ct. 1950), certiorari denied 340 U.S. 920, 71 S.Ct. 358, 95 L.Ed. 665 (1951), a case primarily concerned with a contention that the goods taxed were exempt as being in the course of interstate commerce, where it was said (221 P.2d, at p. 919) that "the law presumes that all property, such as that before us, is subject to taxation at the place where it was on tax day."
Reflection concerning the rationale for the due process basis for denying the power of taxation over personal property absent from the state will reflect the lack of merit in respondent's invocation of the doctrine here. The theory is that for a state which offers no governmental services in relation *55 to property, as where it is physically absent from the jurisdiction, to levy a tax on it is so unfair and unjustified as to be tantamount to taking the taxpayer's property without due process. Union Refrig. Transit Co. v. Kentucky, supra, 199 U.S., at p. 202, 26 S.Ct. 36; "the [due process] question is whether the tax in practical operation has relation to opportunities, benefits, or protection conferred or afforded by the taxing State," Norfolk & Western R. Co v. Missouri Tax Com., supra, 390 U.S., at p. 325, n. 5, 88 S.Ct., at p. 1001).
The tax the Division nullified here was for governmental services and protection which taxpayer's personal property was receiving from Bayonne and from New Jersey as of January 1, 1964, when that property was permanently situated in Bayonne. The fact that in the statutory tax scheme the tax is denominated as "for" 1965 and permits the taxpayer to pay it in the latter calendar year does not gainsay the truth of the foregoing assertion. Nor does that fact palliate the escape from tax contribution for the governmental services and protection as of the date referred to if International Nickel Co. were to succeed in voiding this assessment. The taxes paid by the corporation to Bayonne in 1964 do not cover the obligation, as those were for the protection and services it was receiving as of January 1, 1963. Under our statutory scheme no taxpayer pays taxes for more tax years than the number of assessing dates on which he possesses tangible personalty within the borders of the state.
There is no talismanic quality or significance of constitutional dimension in the "tax year" such that absence from the State of personal property all during that year should automatically invalidate an assessment denominated "for" that year but statutorily based upon location in the State of property upon a certain date preceding, but not unduly remote therefrom, and reasonably referable to that year. The tax here contested does, in the language quoted above from Norfolk & Western R. Co. v. Missouri Tax Co., "in *56 practical operation [have] relation to opportunities, benefits, or protection conferred or afforded" by New Jersey and Bayonne.
While assessing practices in most states vary in respect of the relation in time between assessing, or tax dates, and corresponding tax years, the New Jersey statutes have for a long time fixed assessing dates which antedated the commencement of the tax year. Until 1960, as noted above, October 1 of the prior year was designated the assessing date for both real and personal property, R.S. 54:4-1, and the date was moved back in 1960 to January 1 of the prior year for tangible personal property used in business. See above. A reasonable time interval between assessing date and tax year has obvious functional justification. In New Jersey statutory theory, the local assessor examines the property on the assessing date and carries on the work of valuation and assessment from then until January 10 following, when he files his completed list of assessed valuations with the county board of taxation. N.J.S.A. 54:4-35. That body then conducts an administrative review of the assessment lists, and certifies the lists to the local collectors after revising and correcting the assessments contained therein, as may be necessary, on or before May 1. N.J.S.A. 54:4-55. Taxes assessed are payable quarterly during the tax year. N.J.S.A. 54:4-66, and assessments are appealable to the county board on or before August 15. N.J.S.A. 54:3-21. Further appeals to the State Division of Tax Appeals and the Appellate Division of the Superior Court are also provided for.
Under the recent statutory amendments applicable to tangible personal property used in business, a considerable amount of information must be collated before assessment valuation ratios and tax rates for any tax year can be determined for such property. See, e.g., L. 1963, c. 9; L. 1964, c. 141, and L. 1966, c. 138. Presumably, the time period between assessing date and tax year was extended (by moving the assessing or listing date back to January 1 of the prior *57 year) in order to render the administration of the foregoing revised assessing procedures more convenient and feasible.
In these circumstances, the time spread between assessing date and tax year is not unreasonably great, and respondent does not argue the contrary. We see no reason why, in the light thereof, our statutory scheme should be held vulnerable on due process grounds when applied to exact a tax for personal property permanently present in and receiving governmental services from the municipality and State on and as of January first of a given year merely because the assessment will not be formally entered in the books and the taxpayer not be billed for and required to pay the tax until the following calendar year, pending which he removes the property from the State.
The assessment in question is valid. The judgment of the Division of Tax Appeals is
Reversed.
NOTES
[1] However, mere presence of personal property in a taxing district on the assessing date will not assure its taxability there if it was present there only temporarily. In such case it is assessable at the residence of its owner. George M. Brewster & Son, Inc. v. Borough of Bogota, 20 N.J. Super. 487 (App. Div. 1952).
[2] It may further be noted that the Railroad Tax Law, like the Personal Property Tax Act here involved, fixes the assessing date for all property in railroad use at January 1 of the year preceding the tax year. However, it expressly excludes property passing out of railroad ownership between January 1 and October 1, N.J.S.A. 54:29A-17 (presumably to enable it to be assessed locally rather than by the State).
[3] The Pennsylvania statute provided for assessment of the stock at the value between November 1 and November 15 of each year for the tax year ending in said November.