83 N.J. Super. 586 (1964)
200 A.2d 629
THE BOROUGH OF BOGOTA, PETITIONER-APPELLANT,
v.
BREWSTER EQUIPMENT COMPANY, RESPONDENT-RESPONDENT, AND DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, RESPONDENT. [1960 AND 1961 ASSESSMENTS]
THE BOROUGH OF BOGOTA, PETITIONER-APPELLANT,
v.
GEORGE M. BREWSTER & SON, INC., RESPONDENT-RESPONDENT, AND DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, RESPONDENT. [1960 AND 1961 ASSESSMENTS]
Superior Court of New Jersey, Appellate Division.
Argued November 18, 1963.
Decided May 20, 1964.
*590 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Charles Rodgers argued the cause for respondent George M. Brewster & Son, Inc. (Messrs. Breslin & Breslin, attorneys).
Mr. Frederick L. Bernstein argued the cause for appellant (Mr. Walter H. Jones, attorney).
Mr. Herbert J. Hannoch argued the cause for respondent Brewster Equipment Company (Messrs. Hannoch, Weisman, Myers, Stern & Besser, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
The Borough of Bogota appeals from final judgments of the Division of Tax Appeals, Department of the Treasury, affirming the dismissal by the Bergen County Board of Taxation of the complaints it had filed under the Omitted Assessment Act, N.J.S.A. 54:4-63.12 et seq. By those complaints Bogota had sought to have the county tax board determine that certain personal property had been omitted from the respective assessments made against Brewster Equipment Company (hereafter Equipment Company) and George M. Brewster & Son, Inc. (hereafter Brewster Company) for the tax years 1960 and 1961, and then fix and add of record the amount of such assessment of omitted property.

*591 I.
Equipment Company was incorporated under the laws of New Jersey in May 1956. Its principal office and place of business was in Bogota, where it shared the offices and premises of its "parent" corporation, Brewster Company, which was engaged in the business of contracting for public improvements. George M. Brewster, son of the president of the parent corporation, became president of Equipment Company. Brewster Company sold its construction equipment to the new company for $3,000,000. Simultaneously, and on May 1, 1956, a lease was executed whereby Equipment Company agreed to lease the construction equipment to Brewster Company as and when the latter had need and use therefor, the rental to be at the rates set out in the latest edition of the trade publication "Rental Rates for Construction Equipment," published by the Associated Equipment Distributors, Chicago, Ill. Brewster Company was to have first call upon any construction equipment available. Although most of Equipment Company's business was with Brewster Company, it did lease its equipment to other construction companies from time to time.
Edwin C. Ludwig was the Bogota assessor during the tax years in question and held that office from May 1, 1953 to June 30, 1962. He claims he had no knowledge of the existence of Equipment Company until early in 1961. The result was that no assessment was levied against that company's personal property for any of the years 1956 through 1961.
In 1960 the governing body of Bogota ordered a general revaluation of property, the new values to be effective in the tax year 1961. Bogota's original contract with Associated Surveys, the company which undertook the revaluation, called for a revaluation of all property. However, only real estate was revalued, the borough relying upon the personal property returns which taxpayers would make under L. 1960, c. 51, N.J.S.A. 54:4-1 et seq. Although the borough mailed out the necessary forms early in 1961, few taxpayers responded *592 when they learned that the Legislature had postponed the operation of the act. The assessments for 1961 made in light of the revaluation resulted in the filing of more than 250 tax appeals. Whether it was this that brought into focus the matter of the personal property assessments of the two companies, or Ludwig's campaign for reelection as assessor, or both, the fact remains that these assessments were discussed by the governing body, borough counsel and Assessor Ludwig in the summer of 1961.
Sometime in July 1961 Ludwig called upon William J. Brewster, president of Brewster Company, and requested a schedule of equipment. Brewster said it was not his policy to do so but allegedly gave Ludwig a figure of $2,200,000 as the value of the property owned by Equipment Company and Brewster Company. Ludwig testified that Brewster did not give him a breakdown of the figure, either as to what portion was owned by each company, or what part represented personal and what part real property.
The result was that on August 22, 1961 Ludwig made written demand on the companies to produce for examination all their books and records listing tangible personal property, particularly noting such property as was exempt, these books and records to be presented at the office of the borough clerk on August 29. The matter was postponed until September 5, when both companies appeared by counsel. They questioned the purpose for which the information concerning the personal property was sought, and when Ludwig admitted that he was a candidate for reelection, they requested an adjournment until after the November election. Counsel for Bogota denied the request, whereupon the taxpayers withdrew from the hearing.
On September 29, 1961 the governing body of Bogota filed four complaints with the Bergen Board of Taxation, pursuant to N.J.S.A. 54:4-63.13 (section 2 of the Omitted Property Act, L. 1947, c. 413): two were directed toward Equipment Company, respectively covering the tax years 1960 and 1961, and two toward Brewster Company for the same tax years. *593 Each complaint alleged that personal property had been omitted for the tax year in question, consisting of (a) vehicular construction equipment registered with the Motor Vehicle Department of New Jersey; (b) other moving or movable construction equipment not registered with the Motor Vehicle Department, such as tractors, loaders, cranes, conveyors, trailers, etc.; (c) all machinery, attachments or equipment appurtenant to, part of, or used as an accessory for the personal property described in (a) and (b); and (d) all other tangible personal property. Each complaint alleged that notwithstanding that information as to the nature, location, extent, value and exempt status of the taxpayer's personal property had not been made available to the borough on demand, the personal property set out in Schedule A of the complaint, together with all accessory equipment, had been omitted from assessment for the tax year in question. The true value of that omitted property and equipment, after deducting such of it as the taxpayer could prove to be exempt, was said to be $3,000,000. The complaint demanded judgment determining that the property in Schedule A was omitted from assessment for the tax year and fixing and adding of record the amount of said assessment. Schedule A consisted of a three-page itemization of trucks, tractors, cranes and other equipment, the motor vehicle registrations of about half of them being listed. The list had been prepared from information obtained from the Motor Vehicle Department, conditional sales and chattel mortgages recorded in the Bergen County Clerk's Office, prequalification bids on construction jobs, and other sources. The $3,000,000 figure apparently reflected a Dun and Bradstreet rating and the $2,200,000 unspecific figure given Ludwig by Mr. Brewster.
The four complaints obviously lacked the specificity called for by N.J.S.A. 54:4-63.13, which requires that an omitted property complaint "shall specify the property alleged to have been omitted and the particular year of the assessment." Duke Power Co. v. Essex County Board of Taxation, 122 N.J.L. 589, 590-591 (Sup. Ct. 1939), affirmed per *594 curiam 124 N.J.L. 41 (E. & A. 1940); Green v. Passaic County Board of Taxation, 131 N.J.L. 13, 16 (Sup. Ct. 1943)  both dealing with the predecessor of the present statute, N.J.S.A. 54:3-20.
Upon receipt of the complaints the county tax board scheduled for November 4, 1961 the summary hearing required by N.J.S.A. 54:4-63.14. The borough subpoenaed the executive officers of the two corporations to appear before the board with the records not previously produced. The companies appeared, but without the records, whereupon the borough moved that the board exercise its power under N.J.S.A. 54:3-22 to compel compliance. The board ordered the production of all company records pertaining to the personal property and equipment in question. Each of the companies then filed records of their depreciable assets, as of October 1, 1959 and October 1, 1960. The county board made these records available to counsel representing the borough, who then filed supplemental complaints listing all the equipment in the schedules, without regard to their ownership by one or the other company, nature, location, use or exempt status.
After an extended hearing on December 14, 1961 the county tax board dismissed the complaints at the close of the borough's proofs. In so doing, it made the following rulings, among others: the borough had the burden of proving what personal property, if any, had been omitted; all construction equipment licensed by the State and upon which a registration fee had been paid were "motor vehicles" and therefore exempt from taxation under R.S. 54:4-3.21; the borough had failed to specify in the complaints and supplemental complaints the property alleged to have been omitted; it had failed to produce evidence of just what personal property had been omitted, and the borough had therefore failed to establish a prima facie case.
N.J.S.A. 54:4-63.23 provides that judgments of a county tax board "assessing omitted property" may be reviewed by the Division of Tax Appeals. Because the borough was uncertain as to whether an appeal could be taken from a county *595 tax board judgment dismissing an omitted assessment proceeding, it filed concurrent appeals in the Appellate Division and in the Division of Tax Appeals. Additionally, because the county tax board was considered as having essentially local functions to perform, the borough instituted proceedings in lieu of prerogative writs in the Law Division. By consent of all parties, the Law Division action (Docket L-10098-61 PW) was stayed pending the outcome of the other appeals. Similarly, the appeals to the Appellate Division (Dockets A-445-61, A-446-61 and A-447-61) were dismissed with the direction that their subject matters be heard and decided in the course of any appeal that might be taken from judgments of the Division of Tax Appeals.
The Division subsequently heard the testimony of witnesses produced by the borough on December 11 and 20, 1962 and January 31, 1963. Those witnesses included Harold Freet, vice president, secretary and director of Equipment Company; George M. Brewster, president and director of that company; Assessor Ludwig; Theodore Saunders, cost analyst, assistant secretary and director of Brewster Company; J. Alex Mackenzie, office manager, assistant secretary and assistant treasurer of Brewster Company, and Stewart Davis of Equipment Company. The testimony given by Freet, Brewster, Saunders and Davis was particularly enlightening as to the nature, location, use, value and exempt status of the personal property of the companies.

II.
The Division dismissed all four appeals at the close of the borough's case. The hearer held that the Division had jurisdiction to review the action of the county board by virtue of N.J.S.A. 54:2-35. We agree. That statute provides that "any action or determination" of a county tax board may be appealed to the Division. He also noted that much of the testimony was irrelevant, such as whether the omitted assessment proceedings were politically inspired; whether Equipment Company had failed to inform the borough of its existence *596 and the extent and value of its personal property; and whether the admission of value ($2,200,000) made by William J. Brewster two years after the assessment date bore upon the personal property assessable for 1960. We are in accord with these observations. (1) The motivation for the omitted assessment proceedings, although suspect, is irrelevant. (2) Equipment Company had no obligation to inform the borough of its existence nor, under R.S. 54:4-12, as amended by L. 1945, c. 163, § 4, the then applicable act, to report the extent and value of its personal property unless requested to do so on application of the assessor. (Such reports would be required under L. 1960, c. 51, § 10, further amending R.S. 54:4-12. And see L. 1963, c. 9, § 3, supplementing L. 1960, c. 51; N.J.S.A. 54:4-2.39.) Finally, (3) as noted, the $2,200,000 figure not only had no demonstrable application to the tax years 1960 and 1961, but was undifferentiated as to company and as to whether the property was real or personal.
As the Division hearer observed, the question before him was whether personal property subject to taxation for either year had been omitted from the tax rolls  not whether it had been inadequately or incorrectly assessed. Where an assessor makes an assessment and files it with the county tax board, a presumption arises that it is correct. If his action is then affirmed by the county tax board, a further presumption attaches which cannot be overturned by the Division on appeal, in the absence of credible and substantial proof establishing that the assessment was incorrect. We agree with the Division hearer that the borough did not have the benefit of those presumptions on appeal to the Division. There was no legal assessment to be reviewed, and no administrative finding by the county tax board that personal property had been omitted from assessment. Accordingly, the hearer correctly ruled that the borough, unaided by any presumption in its favor, had the burden of proof of showing that personal property of either or both companies had been omitted.
On the basis of the extensive record before him, the Division hearer found that the borough had not, by the introduction *597 of credible evidence, sustained its burden of establishing that personal property belonging to Equipment Company, "specified in nature," was omitted from the Bogota assessment rolls for the tax year 1960, and therefore affirmed the action of the county tax board. And after taking the further testimony of Saunders, produced as a witness by the borough, he reached the same conclusion with regard to Equipment Company for the tax year 1961, stating that he could not ascertain from the record what specific property had been omitted from assessment for that year.
As to Brewster Company, and after taking still further testimony of Saunders with particular reference to that company's records and operations, as well as additional testimony by Assessor Ludwig, the hearer affirmed the county tax board's action in dismissing the appeals for the tax years 1960 and 1961 for the reasons he had expressed in the Equipment Company case. In doing so he added that Brewster Company could hardly defend against an omitted assessment proceeding unless it knew what was actually assessed. The borough had no way of knowing what was included within the assessments made, and so suffered from the same deficiency as the taxpayer. The borough had simply failed to meet its burden of proof.

III.
In view of the action of the Division, the borough is now confronted with not only the presumption of correctness of the county tax board action but with the further presumption of correctness of the decision of our highest tax administrative agency. Both agencies reached their conclusions upon separate review of the facts.
The many decisions of our appellate courts have firmly established the policy that they will not ordinarily disturb factual determinations by administrative agencies founded upon substantial evidence. Passaic v. Gera Mills, 55 N.J. Super. 73, 92 (App. Div. 1959), certification denied 30 N.J. 153 (1959). As we had occasion to state in that case,
*598 "* * * This principle has been expressed in a variety of ways. It has been said that the judgment of the Division should not be disturbed unless the evidence is persuasive that it erred. Aetna Life Insurance Co. v. Newark, above, 10 N.J. [99], at page 104. The conclusions of the Division fixing valuation should not be set aside except for palpable error. Weston Electrical Instrument Corp. v. Newark, 11 N.J. Super. 493, 496 (App. Div. 1951). Our Supreme Court in D.L. & W.R.R. Co. v. Hoboken, above, 10 N.J. [418], at pages 424-425, declared that appellate courts should not inject themselves into the field of original valuation except in very exceptional circumstances, pointing out that the task of coordinating and evaluating expert evidence has expressly been committed by the Legislature to the Division, `a body contemplated to bring an informed judgment from specialized experience to the nice balancing and ultimate resolution of the many complex factors involved.'"
In view of the complicated nature of the record, reflecting as it does a large mass of information regarding the nature, extent, location, use and value of the personal property of each of the two companies, and the exempt status of some of that property, we have made a special effort to determine whether the borough convincingly established its case under the Omitted Assessment Act. Our review of the testimony and exhibits persuades us that the findings and conclusions of the Division find substantial support in the record and should not be disturbed.

IV.
Under the Omitted Assessment Act the county tax board may assess any taxable property "omitted" from assessment for a particular year, or the next succeeding year. N.J.S.A. 54:4-63.12. A written complaint may be filed by the collector of taxes, any taxpayer, the taxing district, or the governing body thereof; or the county tax board may hear the matter on its own motion. N.J.S.A. 54:4-63.13. That section provides that "Any such complaint or motion shall specify the property alleged to have been omitted and the particular year of the assessment." (Italics ours) The matter is heard before the county board in a summary manner, N.J.S.A. 54:4-63.14. If the board "shall determine that the property *599 specified was omitted from the assessment for the particular year, the amount of the assessment shall be fixed by the judgment and the omitted property shall thereupon be assessed for the particular year in such amount." N.J.S.A. 54:4-63.15 (Italics ours).
As the court observed in the Duke Power Co. case, above, 122 N.J.L., at page 591, the word "specify" has a clearly defined meaning. It quoted Webster's New International Dictionary (2d ed. 1948) for that meaning:
"Transitive: 1. To mention or name in a specific or explicit manner; to tell or state precisely or in detail; as to specify * * * articles.

* * * * * * * *
Intransitive: To speak precisely or in detail; to give full particulars."
The court then went on to say that when a claim is made that property has been omitted by the assessor, "the taxpayer is entitled to know what precise or specific property is meant." And see Green v. Passaic County Board of Taxation, above, 131 N.J.L., at page 16.
We recognize that these two cases dealt with the allegations of the complaint, but the same rule should and does apply to the proofs adduced in support of the allegations of a complaint. In most cases omitted assessment proceedings relate to realty  property that is fixed in location and relatively more stable and uniform in use than personal property. The latter, as the Division hearer observed, is of a more transitory nature and of infinite variety. Specificity in a complaint brought under the Omitted Assessment Act, and in the supporting proofs, is essential. We are not to be understood as saying that there must be specificity down to the last detail, but the property alleged to have been omitted must be specified and proved within a reasonable degree. The proofs must be not only persuasive, but convincing.
In this case the borough had the burden of establishing by substantial evidence not only that "specific" taxable *600 personal property had been omitted from assessment, but its value on the respective assessment dates, October 1, 1959 and October 1, 1960. It failed to do so in both respects.

V.
As already stated, Brewster Company is in the business of constructing public projects, some of them quite large. These included roadbuilding, dam construction and other projects, not only in New Jersey but throughout the United States. Equipment Company is in the business of buying, leasing and selling equipment used in such projects, its largest customer being Brewster Company under the May 1, 1956 equipment leasing agreement. Equipment Company also leased its equipment to other contractors within and without the State.
Such equipment as Equipment Company might not have out on location was kept in Brewster Company's yards on the two assessment dates in question. The assessor, Ludwig, testified that he would go to the yards in Bogota and make a visual examination of the property. Based "somewhat on the activity and the number of pieces of equipment that I might see," he would "put on a lump sum assessment"  "it's the practice usually of part time assessors who have no professional experience to do this sort of thing." The assessment so levied obviously included the personal property of both corporations. Ludwig levied the assessment in the name of Brewster Company; Equipment Company did not appear in his assessment rolls. His assessment for the year 1960 was $112,150, based on the 20% ratio of assessment to true value used by Bogota with respect to real property in that year. The assessment for 1961 was $219,860, using the 40% ratio applied to real property for the revaluation.
Before any litigation was pending, and while the nature of his assessment was relatively fresh in his mind, the assessor issued a public statement in which he said, "Whatever personal property owned by both firms that I considered taxable was always assessed and tax levied on a consolidated basis. *601 What has not been taxed is a heavy mobile property [on] which the state levies a license tax." (Italics ours) In the course of the hearing on the 1960 assessment, the Division hearer asked Ludwig,
"[Q]: When you made your 1960 assessment, Mr. Ludwig, against George M. Brewster & Company, did you intend to include in that property belonging to any other?
[A]: I can answer that in this manner, sir: whatever was there, I assumed to be the parent company's equipment or 
[Q]: By `parent company' you mean George M. Brewster & Son
[A]: Yes. I had no knowledge of the other company and I think, possibly, they interchanged things so much, had I had knowledge, it wouldn't have lasted from month to month. That's the only way I can answer it."
Counsel for the borough contends that the absence of Equipment Company's name from the assessment rolls by itself establishes an omitted assessment against its property. The answer may be found in the Tax Act itself which, in R.S. 54:4-54, provides that "No assessment of real or personal property shall be considered invalid because listed or assessed in the name of one not the owner thereof, * * *." Thus, if Equipment Company personal property was mistakenly assessed as the property of Brewster Company or included in the assessment levied against that company  as the proofs establish  the assessment was valid. The borough, having been paid the tax based upon such assessment, cannot now complain.

VI.
One of the argument's projected by the borough on this appeal is that considerable construction equipment was omitted by Ludwig when he made his assessments for the tax years 1960 and 1961. In explanation of his public statement that he had not taxed heavy mobile equipment on which the State levies a license tax, Ludwig testified the equipment he had not assessed was equipment bearing New Jersey license *602 plates. Such property is exempt from taxation under R.S. 54:4-3.21, which reads, in part:
"All motor vehicles registered by the motor vehicle department of the state of New Jersey and upon which registration fees have been paid, in accordance with the provisions of Title 39, Motor Vehicles and Traffic Regulation, shall be exempt from taxation under this chapter."
The borough contends that this statutory exemption does not encompass tractors, rollers and other incidental migratory construction equipment. This calls for an examination of the pertinent provisions of the Motor Vehicle Act found in Title 39 of the Revised Statutes.
N.J.S.A. 39:1-1 defines "motor vehicle" as including "all vehicles propelled otherwise than by muscular power, excepting such vehicles as run only upon rails or tracks." The definition is a comprehensive one. There is nothing in the record to show that either company avoided the registration provisions of the Motor Vehicle Act with regard to motor vehicles, as so defined. Automobiles and trucks (N.J.S.A. 39:1-1 defines "automobile" as including all motor vehicles except motorcycles), tractors, trailers and semi-trailers were duly registered and carried license plates. See N.J.S.A. 39:3-8 and 39:3-20 for the licensing provisions relating to such vehicles. Neither company contends that roadbuilding machinery, rollers and other apparatus or machinery falling outside of these categories were registered motor vehicles and therefore exempt. (In this connection, see State v. Johnson, 68 N.J. Super. 276 (App. Div. 1960).) They carried "temporary" or "in transit" plates, obtained pursuant to N.J.S.A. 39:4-30. Such plates do not register or serve to identify the piece of equipment, but simply identify the owner.
Because of his "look-and-see" method of assessment and his failure to list the personal property of the companies which he considered assessable, Ludwig was totally unable to state whether he had, in fact, failed to assess all assessable machinery and equipment in the Bogota yard. Specifically, his *603 testimony was not such as to indicate with reasonable definiteness that he had failed to assess equipment not registered under the Motor Vehicle Act.

VII.
The borough next claims there was assessable personal property located in New Jersey, but outside of Bogota, on the respective assessing dates; and since the assessor had failed to levy an assessment against such property, it therefore was subject to the Omitted Assessment Act. In support of this position the borough contends that it has the right to assess and tax all tangible personal property owned by a resident corporation, absent proof that such property had acquired a permanent tax situs elsewhere in the State. The rule that personal property temporarily absent from the municipality on the assessment date may be assessed was established by our decision in George M. Brewster & Son, Inc. v. Bogota, 20 N.J. Super. 487 (1952). Neither company disputes that holding.
When Ludwig was asked whether he had assessed anything outside of Bogota, his answer was that he had no knowledge of any of Equipment Company's property located outside the borough. He went on to say that the company undoubtedly had jobs which he was unable to visit. Accordingly, said Ludwig, "I didn't specifically assess anything at these points." On cross-examination, however, he was questioned as to his knowledge of the Brewster case and conceded that he knew that under its holding tangible personal property located outside of Bogota, but in New Jersey, was assessable in Bogota. The record shows the following:
"Q. I am not trying to lead you into any pitfalls. I am trying to find out did you not know that under that decision that you, as the assessor in Bogota, were entitled to assess any property of the Brewster Company temporarily outside of Bogota and still within the State of New Jersey. Did you know that? A. I knew it.

* * * * * * * *
*604 Q. Did you not believe when you were making your assessment for the year 1960 that you were assessing all of the property that you were entitled to assess? In other words, you were making a perfectly proper assessment? A. Yes, I believe that was included in my assessment to some degree. To what degree, I couldn't give you." (Italics ours)
The Division hearer was therefore left with the task of resolving three somewhat varying statements made by Ludwig. In his public statement Ludwig, to repeat, said he had assessed whatever personal property owned by both firms that he considered taxable. In testifying before the Division he said he had not "specifically" assessed New Jersey property located beyond Bogota. Finally, on cross-examination, he admitted he had included such property "to some degree," without defining the extent of the assessment.
Addressing himself to this phase of the case in his findings, the Division hearer, after referring to our decision in the Brewster case, said:
"* * * The assessor knew of this decision and included property which was taxable thereunder in his assessment `to some degree.' To what degree he says he can't state."
The hearer then referred to the argument inferentially raised by the borough that property had been omitted from assessment because of some mistaken notion the assessor might have had concerning the exemption extended to all property subject to registration under the Motor Vehicle Act. The assessor, he said, might not have been clear in his own mind as to exactly which items of construction equipment were exempt because registered, but if he had exempted personal property "through a mistake of law, it cannot be identified in the record."
At this point in his findings  and we have been referring to the findings in the Equipment Company case for 1960  the hearer referred to the $112,150 assessment levied for that year on a 20% ratio basis, indicating a true value of $560,750. This, he said, was probably substantially less than the value *605 of personal property owned by the two companies. However, in his view the words "omitted assessment" and "under-assessment" were not interchangeable. Consequently, as noted earlier in this opinion, he found that the borough had not, by the introduction of credible evidence, sustained its burden of establishing that personal property of the taxpayer, specified in nature, was omitted from Bogota's assessment rolls for 1960. The same conclusion was reached as to the 1961 Equipment Company assessment and the assessments against Brewster Company for the two years.
We incidentally note that much of the equipment located elsewhere in New Jersey outside of Bogota undoubtedly was registered under the Motor Vehicle Act and so would be exempt. Just what equipment was outside Bogota and what items in the Brewster yard in the borough, and precisely which of these items were registered and which unregistered under the Motor Vehicle Act, is not established by the record. Bogota's proofs are thus lacking in even the minimum reasonable specificity required under the Omitted Assessment Act.
Like the Division hearer, we gain the clear impression from the testimony and exhibits that the assessments for 1960 and 1961 represented something less that the value of the taxable personal property of the companies. However, we cannot proceed on surmise and speculation, nor blink at the language of N.J.S.A. 54:4-63.13 and 54:4-63.15, already referred to and which required a reasonable specification of the omitted property.

VIII.
Another phase of Bogota's appeal relates to such personal property of the companies as may have been located outside of New Jersey and, in particular, in California, Utah, New York and Pennsylvania. Here, again, its argument rests upon the rule announced in George M. Brewster & Son, Inc. v. Bogota, above, 20 N.J. Super. 487. To be assessable by Bogota, personal property located in other states must not have acquired an actual situs there.
*606 The property in question consisted largely of road-building and earth-moving equipment leased to contractors who were engaged in various building projects in those states. The record shows that this equipment was delivered to the contractors there, used by them there, and sold there by Equipment Company when the job was completed. With very minor exceptions  it was indicated that some New York equipment was returned to or repaired in New Jersey  none of the equipment was ever inside the boundaries of New Jersey. The testimony of Freet, Saunders and Davis definitely and completely establishes these facts. Except for the few pieces just mentioned, the property therefore never achieved a tax situs in New Jersey, and so was not taxable under N.J.S.A. 54:4-9 ("The tax on all tangible personal property in this State shall be assessed in and for the taxing district where the property is found"). To allow Bogota to tax tangible personalty located in California, Utah, New York and Pennsylvania on October 1, 1959 and October 1, 1960 would result in a denial of due process of law  such property then being permanently located in those states and employed there in the prosecution of Brewster Company's business. Union Transit Co. v. Kentucky, 199 U.S. 194, 26 S.Ct. 36, 50 L.Ed. 150 (1905); Central Railroad Co. v. Pennsylvania, 370 U.S. 607, 82 S.Ct. 1297, 8 L.Ed.2d 720 (1962).
We are in accord with the finding of the Division hearer that the tangible personal property used in connection with the out-of-state construction projects had a tax situs outside of New Jersey and was not taxable by Bogota.

IX.
The weakness of the borough's case stems entirely from the slipshod procedure of its assessor in making his original assessments. By his own testimony he was a part-time official with no professional experience. As is too often the case, he relied solely upon what has been termed the "squint-eye" method of assessment. If, as he said, he did in fact go to the *607 Brewster yards in Bogota to see what tangible personalty there was on the premises, he failed to take even the minimum administrative precaution of listing the equipment he considered taxable. Instead, he made a "lump sum" assessment  assessed on a "consolidated basis," to use his words. He knew of our Brewster decision and that personal property located elsewhere in the State but having no permanent tax situs there was assessable  if not exempt under the Motor Vehicle Act. Nonetheless, he did not check to see just what property was so located, its nature, value and non-exempt status, but instead took such property in account "to some degree" in making his assessment.
This inexcusable laxity in assessment procedure made the borough's task in establishing omitted assessments an impossible one. The borough did what it could. It conducted extensive examinations through depositions, propounded interrogatories, obtained copies of all pertinent corporate records. It brought to the witness stand all corporate personnel and officials who might possibly be of help to it. Despite this, the borough has not made out a case.
We have reviewed the record with the same painstaking care as it undoubtedly received in the Division of Tax Appeals. As we have said, we find no substantial proof as to just what specific property was omitted  where it was located, of what it consisted, whether it was assessable or exempt in whole or in part, or what its true value might have been on the assessing dates.
As in the Duke Power Co. case, above, the taxpayer, as well as the county tax board and the Division, were entitled to know with reasonable precision what specific property was omitted. In the language of Green v. Passaic County Board of Taxation, above, 131 N.J.L., at page 16, a complaining municipality should give  and prove  the full particulars, "so that the accused taxpayer may have exact knowledge of the objective and also, as we think, so that the tribunal in whose jurisdiction the proceeding is, and so that all those *608 who are in one way or another brought into the proceeding, may have that knowledge."
We find the proofs with regard to the true value of personalty allegedly omitted from assessment diffuse, indefinite and unsatisfactory. Accordingly, were we able to determine just what personal property was omitted from assessment  the Division hearer could not, nor can we  we would find it impossible to assign a satisfactory true value to such property, even with all the testimony and detailed exhibits before us.
We come then, in a full circle, to what we said in Part III of this opinion. We find that the determinations of the Division of Tax Appeals have a substantial foundation in the record and should not be disturbed. The hearing before that administrative agency was de novo. We find no palpable error in its resolution of the factual dispute or in its application of pertinent legal principles.
Affirmed.