## DISTRICT OF COLUMBIA v. SMOOT SAND & GRAVEL CORP.

### No. 10519.

United States Court of Appeals
District of Columbia Circuit.

Argued April 13, 1950.

Decided July 24, 1950.

988

Mr. George C. Updegraff, Assistant Corporation Counsel, D. C., with whom Messrs. Vernon E. West, Corporation Counsel, D. C., and Chester H. Gray, Principal Assistant Corporation Counsel, D. C., were on the brief, for petitioner.

Mr. David R. Shelton, Washington, D. C., for respondent.

Before PROCTOR, BAZELON, and FAHY, Circuit Judges.

FAHY, Circuit Judge.

The principal question presented is whether under statutes applicable in the District of Columbia tugs, scows and launches owned by the respondent Delaware corporation and employed to a substantial degree in its business in the District may be subjected to the personal property tax of the District on an apportionment basis.

The problem is before us a second time, now on petition of the District to review a decision of the Board of Tax Appeals holding in substance that the vessels may not be taxed on an apportionment basis because of the absence of statutory authority so to do. Accordingly taxes and penalties collected for a number of years were ordered to be refunded to respondent. This was done notwithstanding our previous decision that these properties could constitutionally be taxed by the District upon a fair apportionment of value though not at full value. Smoot Sand & Gravel Corp. v. District of Columbia, 1949, 84 U.S.App.D.C. 367, 174 F.2d 505. We had remanded the cause to the Board of Tax Appeals for further proceedings not inconsistent with the opinion. In those proceedings the District took the position we had decided the properties could be taxed on an apportionment basis and contends now the Board disregarded our mandate to that effect. The Board thought we had held no more than that such a tax would be constitutional. It construed our earlier decision in Queen City Brewing Co. v. District of Columbia, 1943, 77 U.S.App. D.C. 213, 134 F.2d 44, as foreclosing such a tax in the absence of a statute which authorized and defined a method of apportionment.

The case need not turn on whether or not our mandate in Smoot Sand & Gravel Corp. v. District of Columbia, supra, has been obeyed. The substantive questions are fairly presented. Our mandate on the previous decision is not to be con-

strued as having directed an apportioned tax if that is illegal in the District. On the other hand, if such a tax is permitted by existing statutes the present petition is well taken.

## I. The Vessels Have a Taxable Situs in the District of Columbia.

In our prior decision we stated the facts as follows:

"The property consists of tugs, scows and launches. They are used for the transportation of sand and gravel from deposits in Virginia and Maryland to storage places in the District of Columbia and thereafter to points of delivery on the Potomac River and the Chesapeake Bay in Maryland and Virginia. They come into the District from the places of deposit on an average of once a day but spend more time out of the District than in the District. The scows were not licensed or enrolled anywhere. The other vessels were licensed and enrolled at the port of Alexandria, Virginia.

"Petitioner corporation is domiciled in Delaware. Its commercial office is in the District of Columbia. Its business is production and sale. Its production occurs in Virginia and Maryland. Its commercial transactions center in the District. Its deliveries are made in the District, in Maryland, and in Virginia. Its tugs and scows are used exclusively in interstate commerce." 84 U.S.App.D.C. at pages 367, 368, 174 F.2d at pages 505, 506.

It also appears that no personal property tax is levied on the property in Delaware, that such tax has not been paid in Maryland, but that taxes are levied on the equipment in Virginia on the basis of an assessment of approximately 30% of its value.

It should be added that respondent, for purposes of income tax deductions, has apportioned 75% of the depreciation on its machinery and equipment, including the vessels here involved, to the District, and also has apportioned 75% of its income from its sand and gravel business (sales and services) as derived from District of Columbia sources.

The principal statute relied upon by the District reads as follows:

"On all tangible personal property, assessed at a fair cash value (over and above the exemptions provided in section 47—1208), including vessels, ships, boats, tools, implements, horses, and other animals, carriages, wagons, and other vehicles, there shall be paid to the collector of taxes of the District of Columbia the rate of tax provided by law." 47 D.C.Code § 1207 (1940).

This provision expressly includes vessels, ships and boats. They may not be excluded merely because their domiciliary situs is not in the District. It is no longer open to doubt that the tax situs of personal property is not necessarily limited to the domicile of the owner. Pullman's Palace Car Company v. Pennsylvania, 1890, 141 U.S. 18, 11 S.Ct. 876, 35 L.Ed. 613, see, also, Union Refrigerator Transit Co. v. Kentucky, 1905, 199 U.S. 194, 26 S.Ct. 36, 50 L.Ed. 150, 4 Ann.Cas. 493; American Refrigerator Transit Co. v. Hall, 1898, 174 U.S. 70, 19 S.Ct. 599, 43 L.Ed. 899. It is a question of the nature and extent of the use of the property within the state asserting the authority to tax. By virtue of their extensive, habitual and continuous use in business in the District of Columbia we think these properties have a tax situs here. They are in a tax sense more or less permanently located in the District though not always here in the same permanent sense as real estate.

In Johnson Oil Refining Co. v. Oklahoma, 1933, 290 U.S. 158, 54 S.Ct. 152, 78 L.Ed. 238, "the validity of property taxes laid in Pawnee County, Oklahoma, under the state statute, upon the entire fleet of appellant's tank cars" was challenged under the due process clause of the Fourteenth Amendment on the ground that the cars did not have their situs within the State "and hence that the state had no jurisdiction to tax them." The Supreme Court of the United States said:

"The basis of the jurisdiction is the habitual employment of the property within the state. By virtue of that employment the property should bear its fair

share of the burdens of taxation to which other property within the state is subject. * * *" 290 U.S. at page 162, 54 S.Ct. at page 154.

■ In the earlier case of Pullman's Palace Car Company v. Pennsylvania, supra, upholding a State tax on pullman cars used in interstate commerce, the facts sufficiently appear from the following portion of the opinion:

"* * * The cars were continuously and permanently employed in going to and fro upon certain routes of travel. If they had never passed beyond the limits of Pennsylvania, it could not be doubted that the state could tax them, like other property, within its borders, notwithstanding they were employed in interstate commerce. The fact that, instead of stopping at the state boundary, they cross that boundary in going out and coming back, cannot affect the power of the state to levy a tax upon them. * * *" 141 U.S. at page 26, 11 S.Ct. at page 879, 35 L.Ed. 613.

In the Pullman opinion a factual and, it may be argued, a legal distinction was suggested between railroad cars and land vehicles, on the one hand, and, on the other, ships or vessels engaged in interstate commerce but having a home port. Any distinction of this character affecting the tax situs of the vessels here involved has been removed by Ott v. Mississippi Barge Line Co., 1948, 336 U.S. 169, 172–174, 69 S.Ct. 432, 93 L.Ed. 585.

■ In Reeves, Commissioner v. Island Fuel & Transportation Co., 313 Ky. 400, 230 S.W.2d 924, 927, the disputed tax had been levied in Kentucky on barges and towboats owned by a Maine corporation. Its principal place of business was in West Virginia. It also had extensive installations in Ohio. It maintained mooring facilities in a county of Kentucky "which are used when the exigencies of navigation require." It made calls at Kentucky ports and habitually operated its boats and barges along a regular route between Huntington, West Virginia and Cincinnati, Ohio, of which route 94.6% was in Kentucky. The company contended that the vessels were only transiently present in Kentucky, with no termini or regular port of call or destination in that State, that they were not permanently situated in Kentucky and therefore had no taxable situs there. The Court of Appeals of Kentucky, in rejecting this position, said in part:

"* * * The idea of permanency, with respect to personal property, seems generally to be, that for such property to acquire a taxable situs, it must have a more or less permanent location as distinguished from a transient or temporary one. However, permanency in the sense that it must be fixed like real property is not essential to the establishment of a taxable situs for personal property. It seems to be sufficient, when in the ordinary course of business, that property is present and being used and employed with a consistent continuity and not spasmodically * * *."

* * * * *

"It now appears that courts generally adhere to the rule that property sent into a state by a nonresident, to be used or employed permanently there, must bear its fair share of the burden of taxation, although no one unit of such property is ever more than temporarily located within the taxing state. * * *"

In Union Tank Car Co. v. McKnight, 7 Cir., 1936, 84 F.2d 421, 423, it is squarely held that the State could tax on an apportionment basis rolling stock belonging to a foreign corporation but habitually found in the State. The State court had approved a method of taxation "on the basis of daily average of cars within the state". See, also, People v. Wilson Car Lines, Inc., 1938, 369 Ill. 294, 16 N.E.2d 752.

Under the foregoing decisions there can be little question that respondent's vessels have a situs in the District which would support an apportionment tax. The basis underlying the cases is explained and left unimpaired in Northwest Airlines v. Minnesota, 1943, 322 U.S. 292, 296–7, 64 S.Ct. 950, 88 L.Ed. 1283, 153 A.L.R. 245; see also, dissenting opinion 322 U.S. at pages 312–313, 64 S.Ct. at page 960. A large part of respondent's business is done in this

community. The facilities of the community are available to it and to its equipment, which moves in and out of the District not in a temporary or transient fashion but in a constant and continuing pattern of business operations. Presence of the vessels in the District is neither incidental, sporadic nor spasmodic. They are "habitually employed" in the District. Johnson Oil Refining Co. v. Oklahoma, supra.

## II. The Statutory Authority.

The important question still remains whether the local statutes,[1] which are in general terms, authorize an apportioned tax.

■ There was no special statute in Oklahoma [2] authorizing the tax sustained as constitutional in Johnson Oil Refining Co. v. Oklahoma, supra. The Oklahoma authorities were permitted to devise a fair method consistent with the "like jurisdiction of other States." The Supreme Court, without a State statute to guide it, said, "the tax may be fixed by an appraisement and valuation of the average amount of the property thus habitually used and employed." 290 U.S. at page 162, 54 S.Ct. at page 154, 78 L.Ed. 238, quoting from American Refrigerator Transit Co. v. Hall, supra, 174 U.S. at page 82, 19 S.Ct. at page 604, 43 L.Ed. 899. On the remand the Supreme Court of Oklahoma said that "be-

yond question" the cars are taxable under the general statute. In re Johnson's Oil Refining Co.'s Property, 1934, 167 Okl. 452, 30 P.2d 692.

See, also, Shaffer Oil & Refining Co. v. County Treasurer, 1935, 175 Okl. 6, 52 P.2d 76, 77, 80, 81, where the court referred to the situation as follows:

"* * * This conclusion was announced notwithstanding the fact that, as we had previously pointed out, there is no specific statute authorizing the tax to be computed on the basis of the 'average number' of cars within a taxing jurisdiction. * * *"

In Pullman's Palace Car Co. v. Pennsylvania, supra, there was no specific statute. In later years, in Union Tank Line Co. v. Wright, 1918, 249 U.S. 275, 284, 39 S.Ct. 276, 279, 63 L.Ed. 602, the Supreme Court noted this in a reference to the Pullman case as follows:

"* * * Pennsylvania demanded taxes of the Pullman Company, an Illinois corporation, for the years 1870 to 1880 upon such portion of its capital stock as total miles of railroad in Pennsylvania over which its cars moved bore to like total in all states. No statute prescribed the method of valuation; it had been adopted by executive officers. * * *"[3]

---

1. In addition to 47 D.C.Code § 1207 (1940), quoted supra, the District of Columbia finds authority for the tax in § 1202 and § 1203 of the same title:

 "All personal property in the District of Columbia subject to taxation shall be listed and assessed at not less than the full and true value thereof in lawful money." 47 D.C.Code § 1202 (1940).

 "The assessor of the District of Columbia, or his successor in office, shall annually cause to be prepared a printed blank schedule of all tangible personal property * * * owned or held in trust or otherwise, subject to taxation * * * and of the classes of corporations and companies to be assessed, together with the rate of tax prescribed, to which shall be appended an affidavit in blank, setting forth that the foregoing presents a full and true statement of all such personal property * * *. Every * * * corporation * * * in said District liable to taxation hereunder

* * * shall * * * fill out the proper blanks in said schedule with a full and true statement, as in this section hereinbefore required, and make and sign an affidavit to the truth thereof * * * and thereupon said board of personal-tax appraisers, or any one of the members thereof, shall assess said property at its fair cash value, and enter the same in the columns upon said blanks provided for that purpose, and the amount thus ascertained shall be entered upon the books for taxation for each fiscal year * * *." (47 D.C.Code § 1203 (1940).)

2. The Oklahoma statute provides (§ 9574, C.O.S.1921):

 "All property in this state, whether real or personal, including the property of corporations, banks and bankers, except such as is exempt, shall be subject to taxation; * * *."

3. The question in the Pullman case was the constitutional one: "* * * whether this tax was in accordance with

Similarly, there was no apportionment statute in Kentucky when Reeves, Commissioner v. Island Creek Fuel & Transportation Co., supra, was decided. The applicable law resided in part in the following sections of the Kentucky constitution:

"All property, not exempt from taxation by this Constitution, shall be assessed for taxation at its fair cash value * * *." Section 172.

* * * * * *

"All property, whether owned by natural persons or corporations, shall be taxed in proportion to its value, unless exempt by this Constitution; * * *." Section 174.

The statute called for a levy of an ad valorem tax by counties on all property subject to county taxation, and also provided:

"The property subject to taxation, unless exempted by the Constitution, shall be as follows: (a) All real and personal property within this state * * *." K. R.S. 132.190.

To like effect are Union Tank Car Co. v. McKnight, supra, arising under Illinois laws, and People v. Wilson Car Lines, supra.

In all these cases the statutes imposed in general terms an ad valorem tax on personal property without provision for apportionment. Yet the States were not required to forego their fair share of taxes on properties which habitually moved in interstate commerce in and out of the

States and were used in business within their respective borders. A tax at full value would not have been fair or permissible, but it did not follow that none at all could be obtained. We find no sufficient reason to depart from such decisions.[4]

There are cases which, it may be said, point in a different direction, such as Marye v. Baltimore and Ohio Railroad Co., 1887, 127 U.S. 117, 8 S.Ct. 1037, 32 L.Ed. 94, and Tamble v. Pullman Co., 6 Cir., 1913, 207 F. 30. But the former turned on the State court's view that the statute applied only to railroads incorporated in the state. This rendered it inapplicable to the property sought to be taxed. See Pullman's Palace Car Co. v. Pennsylvania, supra, 141 U.S. at page 28, 11 S.Ct. 876, 35 L.Ed. 613. We do not feel justified in attempting to distinguish the Tamble case except that it may be construed as applicable only to property which has not acquired a tax situs in a taxing state.

The principal reliance of respondent, however, is the decision of this court in Queen City Brewing Co. v. District of Columbia, 1933, 77 U.S.App.D.C. 213, 134 F.2d 44. The Brewing Company manufactured and sold beer in Cumberland, Maryland, to a distributor located in the District of Columbia. The distributor would send his trucks to Cumberland, purchase and pay for the beer, transport it to Washington and sell it to retailers. The Company had no office or other place of business in the District; was not engaged

---

the law of Pennsylvania is a question on which the decision of the highest court of the state is conclusive. The only question of which this court has jurisdiction is whether the tax was in violation of the clause of the constitution of the United States granting to congress the power to regulate commerce among the several states. The plaintiff in error contends that its cars could be taxed only in the state of Illinois, in which it was incorporated and had its principal place of business." 141 U.S. at pages 21–22, 11 S.Ct. at page 877, 35 L.Ed. 613. It must be remembered also that the question before the Supreme Court in Johnson Oil Refining Co. v. Oklahoma, supra,

was a constitutional one, under the Fourteenth Amendment. The meaning of the state statutes was for the state courts.

4. The provision of the statute in the District of Columbia that all real and personal property in the District of Columbia shall be listed and assessed at not less than "the full and true value thereof" does not legally distinguish the local statute from the Kentucky requirement, for example, of assessment "at its fair cash value". Such terms require an assessment at full or fair value as contradistinguished from one-third or one-half or two-thirds value. They do not affect the question of apportionment.

in business in the District; and had no interest in the business of the distributor. When sold the beer was delivered to the purchaser in Cumberland in half-barrel or quarter-barrel metal containers and in wooden cases containing twenty-four bottles. A deposit was paid for each such container and case, which was refunded when they were returned. The containers remained in the District only until empty. The Company paid taxes to Maryland on all its containers. A tax in the District of Columbia was assessed on valuations equal to the amount of the deposits. This court stated the question as follows:

" * * * the vital question is whether tangible personal property temporarily in the District, belonging to a non-resident not engaged in business in the District, is intended to be and is taxed * * *"

under the statutes referred to in the opinion. We pointed out that the provisions for filing returns applied to companies "in said District", and that for some purposes persons might be in the District constructively rather than actually but this was not so as to the Brewing Company. "It did no business in the District. It maintained no agency here. Its plant is in Maryland. Its sales of beer were made there. There is no language in the statute applicable to this state of facts and none specifically requiring petitioner to file a return. Hence it is not required to pay a tax, since the filing of the return, or an assessment for refusal to file one, when required, is the sole basis for the tax." 77 U.S.App.D.C. at page 215, 134 F.2d at pages 45, 46. We further said:

"True enough it is, that the District statutes require that *all* personal property shall be taxed. But the language used, its context, and long continued practice make it clear beyond question that the personal property so contemplated is that having a definite and permanent situs in the District and not that temporarily brought here by non-residents. * * *" 77 U.S.App. D.C. at page 216, 134 F.2d at page 47.

Our holding must be considered in the light of the facts of the case in contrast to those now before us. We referred to the property as "migratory" and said if a tax were to be levied on such property the statute must show the kind and character of property intended to be taxed and the method of doing so. The language that existing statutes applied only to personal property "having a definite and permanent situs in the District and not that temporarily brought here by non-residents" does not exclude a tax on these vessels. As we have sought to show, while they have no situs in the same fixed and permanent sense as real estate they do have such a permanent status here by reason of their continuous and habitual use in the District as to give them a definite tax situs as personal property in the District of Columbia. In the Brewing Company case, on the contrary, there was no situs to support a District tax.

 It is contended, finally, that the enactment by Congress of special and detailed legislation for the taxation of railroad locomotives and rolling stock which is in the District of Columbia part of the time negatives a construction of the general taxing statutes which would permit an apportioned tax on personal property not included in such separate legislation. We do not feel justified in ascribing this result to the special treatment by Congress of the problem of railroad equipment, nor to the special legislation applicable to motor vehicles, which are taxed according to the number of months they have a situs in the District. 47 D.C.Code §§ 1210, 1211 (1940).[5] Since respondent's vessels have a definite tax situs in the District the provision for a general tax on all personal property supports a tax upon them on a fair apportionment basis. This is the lesson of the precedents which have developed for many years in this field of law. Legislation dealing with particular problems in a manner thought wise by Congress does not remove from the hands of the taxing authorities powers residing in gen-

5. See, also, 47 D.C.Code § 1212 (1940), regarding personal taxes on mercantile establishments, including expressly com-

mon carriers by vessels, entering the District subsequent to June 30.

eral legislation. In the absence of further treatment of the subject by Congress the local statutes regarding personal property, general and broad in terms, should not be construed paradoxically not to include these vessels.

### III. The Method of Apportionment.

As to the method of apportionment we think the Company, in the light of this decision, should be afforded another opportunity to submit a plan for consideration; and that the District of Columbia authorities should not formulate its plan until such opportunity is given and, if availed of, the Company's plan is considered along with other relevant plans and evidence.

### IV. The Question of the Statute of Limitations.

Respondent contends that in any event 90% of the amount in controversy is barred to the District of Columbia because of the statute of limitations. The statute is 47 D.C.Code § 1408 (1940), which provides that assessment shall be made within two years of filing the return, but in case of an incorrect return, whether in good faith or otherwise, the tax may be assessed at any time. The Board of Tax Appeals had concluded on the basis of its findings that the respondent's returns for the years 1941 to 1945, the years involved in the limitation question, were incorrect. See Joint Appendix, pp. 42, 117, Smoot Sand & Gravel Corp. v. District of Columbia, No. 9827. The evidence adequately supports the findings. This being so the assessments in question were not barred by the statute of limitations.

Remanded for further proceedings consistent with this opinion.