**NORTH SLOPE BOROUGH and its Board of Equalization, Appellant,**

**v.**

**PUGET SOUND TUG & BARGE, Crowley Maritime Corporation, and Foss Launch & Tug Co., Appellees.**

**PUGET SOUND TUG & BARGE, Crowley Maritime Corporation, and Foss Launch & Tug Co., Cross-Appellants,**

**v.**

**NORTH SLOPE BOROUGH and its Board of Equalization, Cross-Appellee.**

Nos. 3805, 3858.

Supreme Court of Alaska.

Aug. 10, 1979.

---

Charles K. Cranston, Gallagher, Cranston, Snow & Dahl, Anchorage, for appellant and cross-appellee.

Carl J. D. Bauman, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellees and cross-appellants.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

MATTHEWS, Justice.

This case involves the ad valorem taxation of seagoing vessels which became ice bound within the jurisdiction of the North Slope Borough for three months during 1975. The vessels, 24 tugs and barges on

round trip voyages from western United States ports outside of Alaska, primarily Seattle, Washington, to Prudhoe Bay, entered Borough waters on or about August 1, 1975, and became trapped in the pack ice of the Beaufort Sea in late September and early October. They were not freed until the summer of 1976.

Appellees are owners of the vessels. They are American corporations doing business in Alaska having their principal places of business elsewhere. Each of the vessels in question has a home port in the United States outside the state of Alaska.

The Borough Board of Equalization apportioned taxes on the vessels by valuing them at $5/12$ths of their market value, reasoning that they had been within Borough boundaries for $5/12$ths of the tax year. On appeal from the Board of Equalization the superior court ruled that the home port doctrine announced in *Hays v. Pacific S. S. Co.*, 58 U.S. (17 How.) 596, 15 L.Ed. 254 (1855) precluded taxation of the vessels. The Borough appeals the application of the home port doctrine to this case. The vessel owners have defensively cross-appealed, asserting that the court should also have found the Borough's apportionment to be bad on due process and equal protection grounds.

█ We turn first to the question whether the superior court properly exempted the vessels in question under the home port doctrine. In so doing we have an advantage which was not available to the superior court. While this case was pending on appeal, the Supreme Court of the United States, in *Japan Line, Ltd. v. County of Los Angeles*, —— U.S. ——, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979), in very strong dicta indicated that the home port doctrine has no further vitality. The Court first explained the home port doctrine as follows:

The "home port doctrine" was first alluded to in *Hays v. Pacific Mail S. S. Co.*, 17 How. 596, 15 L.Ed. 254 (1855). In *Hays,* California sought to impose property taxes on ocean-going vessels intermittently touching its ports. The vessels' home port was New York City, where they were owned, registered, and based; they engaged in intercoastal commerce by way of the Isthmus of Panama, and remained in California briefly to unload cargo and undergo repairs. This Court held that the ships had established no tax situs in California.

"We are satisfied that the State of California had no jurisdiction over these vessels for the purpose of taxation; they were not, properly, abiding within its limits, so as to become incorporated with the other personal property of the State; they were there but temporarily, engaged in lawful trade and commerce, with their *situs* at the home port, where the vessels belonged, and where the owners were liable to be taxed for the capital invested, and where the taxes had been paid." *Id.,* at 599–600.

Because the vessels were properly taxable in their home port, this Court concluded, they could not be taxed in California at all.

—— U.S. at ——, 99 S.Ct. at 1817, 60 L.Ed.2d at 343 (footnote omitted). Having described the home port doctrine, the court proceeded to give a history of its demise:

The "home port doctrine" enunciated in *Hays* was a corollary of the medieval maxim *mobilia sequuntur personam* ("movables follow the person," see Black's Law Dictionary 1154 (rev. 4th ed. 1968)) and resulted in personal property being taxable in full at the domicile of the owner. This theory of taxation, of course, has fallen into desuetude, and the "home port doctrine," as a rule for taxation of moving equipment, has yielded to a rule of fair apportionment among the States. This Court, accordingly, has held that various instrumentalities of commerce may be taxed, on a properly apportioned basis, by the nondomiciliary States through which they travel. *E. g., Pullman's Palace Car Co. v. Pennsylvania*, 141 U.S. 18, 11 S.Ct. 876, 35 L.Ed. 613 (1891); *Ott v. Mississippi Valley Barge Line Co.,* 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585 (1949); *Braniff Airways, Inc. v. Nebraska*

*State Bd. of Equalization*, 347 U.S. 590, 74 S.Ct. 757, 98 L.Ed. 967 (1954). In discarding the "home port" theory for the theory of apportionment, however, the Court consistently has distinguished the case of ocean-going vessels. *E. g., Pullman's Palace*, 141 U.S. at 23–24, 11 S.Ct. [876] at 878 (approving apportioned tax on railroad rolling stock, but distinguishing vessels "engaged in interstate or foreign commerce upon the high seas"); *Ott*, 336 U.S. at 173–174, 69 S.Ct. [432] at 434 (approving apportioned tax on barges navigating inland waterways, but "not reach[ing] the question of taxability of ocean carriage"); *Braniff*, 347 U.S. at 600, 74 S.Ct. [757] at 763 (approving apportioned tax on domestic aircraft, but distinguishing vessels "used to plow the open seas").

. . . The "home port doctrine" can claim no unequivocal constitutional source; in assessing the legitimacy of California's tax, the *Hays* Court did not rely on the Commerce Clause, nor could it, in 1854, have relied on the Due Process Clause of the Fourteenth Amendment. The basis of the "home port doctrine," rather, was common-law jurisdiction to tax. Given its origins, the doctrine could be said to be "anachronistic"; given its underpinnings, it may indeed be said to have been "abandoned." *Northwest Airlines, Inc. v. Minnesota*, 322 U.S. 292, 320, 64 S.Ct. 950, 964, 88 L.Ed. 1283 (1944) (Stone, C. J., dissenting). As a theoretical matter, then, to rehabilitate the "home port doctrine" as a tool of Commerce Clause analysis would be somewhat odd.

—— U.S. ——–——, 99 S.Ct. at 1819, 60 L.Ed.2d at 343–44 (footnote omitted).[1] Based on the foregoing we conclude that the home port doctrine is no longer good law.[2]

There remain for consideration the appellees' due process and equal protection arguments. Appellees' first due process argument is that the apportionment accomplished by the Borough Board of Equalization was not performed pursuant to any statute or in accordance with any Borough ordinance. Appellees contend that in the absence of such authorization no apportionment is permissible and, further, the lack of an ordinance has deprived them of an opportunity to be heard.

We cannot credit these as legitimate constitutional arguments. Appellees actively participated in the hearing before the Board of Equalization at which apportionment was suggested, and their attorney commented on it, so there can be no question as to appellees' opportunity to be heard. Likewise, it has not been regarded as impermissible to apportion property taxes without express legislative authority. In *Johnson Oil Refining Co. v. Oklahoma*, 290 U.S. 158, 54 S.Ct. 152, 78 L.Ed. 238 (1933), the Supreme Court reversed a judgment which had sustained an unapportioned tax on railroad cars under a general statute which provided that all property in the state, unless exempt, was subject to taxation. The Court noted that "Oklahoma was entitled to tax its proper share of the property . . . and this amount could be determined by taking the number of cars which on the average were found to be physically present within the State."[3] The case was remanded for a determination of the proper amount then owed. Other cases likewise establish that under a general property taxation statute, notwithstanding the lack of specific apportionment machinery, a governmental unit may collect an apportioned share of property taxes on

---

1. The Court went on to find the tax challenged in *Japan Line* unconstitutional under the "Commerce with Foreign Nations" clause of art. I, § 8, holding that taxation of foreign companies involves considerations not present when a state taxes an American company involved in interstate commerce. —— U.S. at ——–——, 99 S.Ct. at 1820–1821, 60 L.Ed.2d at 346–47.

2. The Supreme Court of California concluded that the home port doctrine was without vitality in 1974. *Sea-Land Service, Inc. v. County of Alameda*, 12 Cal.3d 772, 117 Cal.Rptr. 448, 528 P.2d 56 (1974).

3. 290 U.S. at 163, 54 S.Ct. at 154, 78 L.Ed. at 242.

property which would otherwise escape taxation. *See, e. g., District of Columbia v. Smoot Sand & Gravel Corp.*, 87 U.S.App. D.C. 248, 252, 184 F.2d 987, 991 (1950), *cert. denied*, 340 U.S. 933, 71 S.Ct. 498, 95 L.Ed. 674 (1951), and cases cited therein; *Sea-Land Services, Inc. v. County of Alameda*, 12 Cal.3d 772, 117 Cal.Rptr. 448, 528 P.2d 56, 61 (Cal.1974). *Cf. Department of Revenue of Washington v. Association of Washington Stevedoring Cos.*, 435 U.S. 734, 746, 98 S.Ct. 1388, 1392, 55 L.Ed.2d 682, 695 (1978) (apportionment proper under general business tax).

As another aspect of their due process argument, appellees claim a lack of nexus between the taxes levied by the Borough and the benefits they have received. This point receives scant attention in their brief and no cases or other authorities are submitted. Under these circumstances, we would be fully justified in considering the point to have been waived;[4] however, we have examined it and find it to be without merit.

■ Due process requires that a tax be related "to opportunities, benefits, or protection conferred or afforded" by the taxing authority and such a relationship exists "if the tax is fairly apportioned to the commerce [there] carried on." *Ott v. Mississippi Valley Barge Line Co.*, 336 U.S. 169, 174, 69 S.Ct. 432, 434, 93 L.Ed. 586, 589 (1949). This requirement appears to be readily met here. Appellees maintain a land based office within the Borough during the shipping season. Appellees Puget Sound and Crowley maintain a 38-man camp, numerous items of heavy equipment, and several lighterage vessels within the Borough. Moreover, they have had at least four barges in the Borough continuously since 1970. Appellees are present in the Borough to participate in the commerce and traffic generated by the Prudhoe Bay oil fields

located there, and their presence is presumably of benefit to them. According to the Borough, it offers police protection and certain health care services which are available to appellees. Appellees have not contested this. So long as such services were available whether they were utilized in fact is irrelevant.[5] And appellees have not shown that they are being taxed on the property in question elsewhere for more than ⁷⁄₁₂ths of value.

■ Appellees' equal protection claim is that because the equipment of two airlines operating within the Borough was not taxed for 1975, appellees have been denied equal protection of the laws. The inquiry in claims of this nature is whether there has been " 'a deliberate and intentional plan to discriminate' based on some unjustifiable or arbitrary classification." *State v. Reefer King Co.*, 559 P.2d 56, 65 (Alaska 1976) (citation omitted). The appellees have made no such showing. On the contrary, they have stipulated that the Borough is proceeding with plans to tax the airlines in question. Thus, their claim of denial of equal protection must fail.

REVERSED AND REMANDED with directions to enter judgment for appellant.

---

4. *Kristich v. State*, 550 P.2d 796, 804 (Alaska 1976); *Wernburg v. Matanuska Electric Ass'n., Inc.*, 494 P.2d 790, 794 (Alaska 1972).

5. *See, e. g., Wagoner v. Evans*, 170 U.S. 588, 592, 18 S.Ct. 730, 731, 42 L.Ed. 1154, 1156 (1898); *Thomas v. Gay*, 169 U.S. 264, 278–79,

18 S.Ct. 340, 345, 42 L.Ed. 740, 746 (1898); *Morton Salt Co. v. City of South Hutchinson*, 159 F.2d 897, 900–01 (10th Cir. 1947); *Fears v. United States*, 386 F.Supp. 1223, 1226–27 (N.D. Ga.), *aff'd*, 518 F.2d 1405 (5th Cir. 1975).