Opinion
 

 CALLAHAN, J.
 

 Plaintiff Richard Seegmiller, a taxpayer whose business property was located in the County of Nevada (the County) as of the statutory assessment lien date, sought a partial refund of ad valorem property taxes when he relocated to another state during the next fiscal tax year. The County denied the claim and the trial court sustained a demurrer to his complaint without leave to amend.
 

 On appeal, Seegmiller claims that County’s refusal to prorate or apportion his tax liability based on the actual time the property was located in this state violates the due process, equal protection, and commerce clauses of the United States Constitution. We affirm.
 

 Factual and Procedural Background
 

 This case comes to us after the sustaining of a demurrer without leave to amend. On appeal, we give the complaint a reasonable interpretation, treating the demurrer as admitting all material facts properly pleaded.
 
 (Blank
 
 v.
 
 Kirwan
 
 (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58];
 
 Buckaloo
 
 v.
 
 Johnson
 
 (1975) 14 Cal.3d 815, 828 [122 Cal.Rptr. 745, 537 P.2d 865].) In applying this standard, we note the following material facts.
 

 Seegmiller, doing business in the County under the name Truckee Precision, received a $16,674.53 tax bill on personal property and business
 
 *1400
 
 fixtures from the County tax assessor for the fiscal year July 1, 1994, to June 30, 1995.
 

 On August 8, 1994, Truckee Precision relocated its entire business and inventory to the State of Nevada. Seegmiller paid the property tax bill in question and filed a refund claim with the County Assessment Appeals Board (Board). Because he moved his business out of state 38 days after the commencement of the 1994-1995 tax year, Seegmiller sought a refund of all property taxes which exceeded that fractionated portion of the time (38/365) that his property was located in California. According to the application, such an apportionment was constitutionally compelled to avoid the possibility of dual taxation.
 
 [1]
 

 The Board rejected the claim and Seegmiller thereupon filed this complaint for a refund. The County’s demurrer to the complaint was sustained without leave, Seegmiller having declined the court’s offer to amend the complaint. This is an appeal from the ensuing judgment.
 

 Discussion
 

 The California Constitution provides that “all property” is subject to property taxation at its “full value” unless otherwise provided by the state Constitution or the laws of the United States. (Cal. Const., art. XIII, § 1.) Under California law, the taxing agency’s right to the taxes becomes fixed as of the lien date of the fiscal year to which they relate.
 
 (California Computer Products, Inc.
 
 v.
 
 County of Orange
 
 (1980) 107 Cal.App.3d 731, 737 [166 Cal.Rptr. 68].) Seegmiller concedes his property was located entirely in California as of the lien date, in this case March 1, 1994.
 
 [2]
 
 He submits that when he permanently relocated his property from California to another state in the fiscal year
 
 following
 
 the lien date, the County was constitutionally compelled to give him a pro rata refund of tax paid. Otherwise, claims Seegmiller, the state has subjected him to multiple taxation in violation of the due process and commerce clauses.
 

 While acknowledging that no published California or United States Supreme Court case supports this proposition, Seegmiller analogizes his
 
 *1401
 
 situation to that of mobile personal property which has no permanent tax situs in a given year. There is ample authority that, with respect to transient property which acquires more than one tax situs during a given year, property tax must be apportioned on the basis of the time spent within this state. (E.g.,
 
 Flying Tiger Line, Inc.
 
 v.
 
 County of L. A.
 
 (1958) 51 Cal.2d 314 [333 P.2d 323] [aircraft flown into and out of state];
 
 Sea-Land Service, Inc.
 
 v.
 
 County of Alameda
 
 (1974) 12 Cal.3d 772 [117 Cal.Rptr. 448, 528 P.2d 56] [cargo containers used in interstate and foreign commerce];
 
 Ice Capades, Inc.
 
 v.
 
 County of Los Angeles
 
 (1976) 56 Cal.App.3d 745 [128 Cal.Rptr. 717] [nationally touring ice show in which property is shipped back and forth between east and west coast during the year].)
 

 These cases are inapposite to Seegmiller’s situation. Because mobile property traveling in and out of California has no fixed situs, failure to apportion tax liability would result in ‘“multiple taxation of interstate operations and the tax would have no relation to the opportunities, benefits, or protection which the taxing state gives those operations.’ ”
 
 (Flying Tiger Line, Inc.
 
 v.
 
 County of L.A. supra,
 
 51 Cal.2d at p. 318, quoting
 
 Standard Oil Co.
 
 v.
 
 Peck
 
 (1952) 342 U.S. 382, 385 [72 S.Ct. 309, 310, 96 L.Ed. 427, 430, 26 A.L.R.2d 1371].)
 

 The commerce clause, however, is not implicated here. Seegmiller simply moved his business from its permanent location in California to another permanent location in Nevada. There is no allegation that the property moved back and forth between states or that Seegmiller’s business was an interstate operation. Since it is only “multiple taxation of
 
 interstate operations”
 
 which offends the commerce clause
 
 (Central R. Co. of Pa.
 
 v.
 
 Pennsylvania
 
 (1962) 370 U.S. 607, 612 [82 S.Ct. 1297, 1301, 8 L.Ed.2d 720, 725], italics added), the judgment may not be overturned on this basis.
 

 Pried loose from its commerce clause underpinnings, Seegmiller’s due process argument must also be rejected: “So far as due process is concerned the only question is whether the tax in practical operation has relation to opportunities, benefits, or protection conferred or afforded by the taxing State.”
 
 (Ott v. Mississippi Valley Barge Line Co.
 
 (1949) 336 U.S. 169, 174 [69 S.Ct. 432, 434, 93 L.Ed. 585, 589].) This nexus is satisfied when the property taxed by the domicile state is permanently located within it as of the tax lien date, such that the property has not acquired a tax situs elsewhere.
 
 (Northwest Airlines
 
 v.
 
 Minnesota
 
 (1944) 322 U.S. 292, 294-295 [64 S.Ct. 950, 951-952, 88 L.Ed. 1283, 1285-1286, 153 A.L.R. 245].)
 

 Seegmiller nevertheless contends that once he permanently relocated his property, the County’s refusal to prorate the taxes based on that fraction of
 
 *1402
 
 actual time the property spent here during the fiscal tax year is so inequitable as to infringe on his due process rights. The Supreme Court has declared otherwise:
 
 “Nor does the Due Process Clause confine the domiciliary State’s taxing power to such proportion of the value of the property being taxed as is equal to the fraction of the tax year which, the property spends within the State’s borders.” (Central R. Co.
 
 v. Pennsylvania,
 
 supra,
 
 370 U.S. at p. 612 [82 S.Ct. at p. 1302, 8 L.Ed.2d at p. 725], italics added.) By permanently locating his property within California on the lien date Seegmiller enjoyed “opportunities, benefits, and protection” not granted by any other state. Due process requires nothing more.
 

 Seegmiller’s “multiple taxation” argument proceeds on the unwarranted assumption that the 1994-1995 tax bill operates prospectively only, i.e., that the County is exercising the power to tax in return for
 
 future
 
 benefits and protection provided to the taxpayer during the upcoming tax year. Not so.
 

 The tax lien date (here March 1) is simply a practical method for determining that the taxpayer enjoyed the benefit of governmental services during the year
 
 preceding
 
 the assessment. This was made clear in
 
 City of Bayonne
 
 v.
 
 International Nickel Co.
 
 (1968) 104 N.J.Super. 45 [248 A.2d 547] (affd. 54 N.J. 94 [253 A.2d 545], app. dismissed (1969) 396 U.S. 111 [90 S.Ct. 396, 24 L.Ed.2d 304]) in which a New Jersey appellate court rejected a parallel claim but with even stronger facts favoring the taxpayer.
 

 In
 
 Bayonne,
 
 a taxpayer which removed all its personal property from the state in 1964 was assessed a property tax bill for 1965. The taxpayer contended that since it removed all its property before the tax year in question began, levying of the tax would violate the due process clause. (248 A.2d at p. 550.)
 

 The
 
 Bayonne
 
 court repudiated the claim: “The tax . . . here was for governmental services and protection which taxpayer’s personal property was receiving from Bayonne and from New Jersey as of January 1, 1964, [the lien date] when that property was permanently situated in Bayonne. The fact that in the statutory tax scheme the tax is denominated as ‘for’ 1965 and permits the taxpayer to pay it in the latter calendar year does not gainsay the truth of the foregoing assertion. Nor does that fact palliate the escape from tax contribution for the governmental services and protection as of the date referred to .... [¶ There is no talismanic quality or significance of constitutional dimension in the ‘tax year’ such that absence from the State of personal property all during that year should automatically invalidate an assessment denominated ‘for’ that year but statutorily based upon location in the State of property upon a certain date preceding, but not unduly remote
 
 *1403
 
 therefrom, and reasonably referable to that year. The tax here contested does, . . . ‘in practical operation [have] relation to opportunities, benefits, or protection conferred or afforded’ by New Jersey and Bayonne.” (248 A.2d at pp. 552-553, quoting from
 
 Norfolk & W. R. Co.
 
 v.
 
 Tax Comm’n
 
 (1968) 390 U.S. 317, 325, fn. 5 [88 S.Ct. 995, 1001, 19 L.Ed.2d 1201, 1207].)
 

 Unlike the taxpayer in
 
 Bayonne,
 
 Seegmiller’s business property was actually located in California for a portion of the assessment year, giving this state an even stronger justification for taxation. In any event, Seegmiller cannot escape the fact that, unlike the apportionment cases upon which he relies, his property was
 
 permanently situated
 
 in and had its
 
 sole tax situs
 
 in California as of the lien date. The fact that the County permitted him to pay the taxes in a subsequent fiscal year does not mitigate the fact he was subject to the “opportunities, benefits, and protection” afforded by the County and the state during the year in which it was assessed.
 
 [3]
 
 Since the tax levy corresponded to the benefits of governmental services enjoyed as of the tax lien date, the timing of Seegmiller’s exit from the state was, for due process purposes, irrelevant. A fortiori, no “proration” was required for the following year.
 

 Seegmiller also asserts the tax violated equal protection because if his assets were moveable, as in the case of airplanes or interstate touring equipment, he would enjoy the benefits of tax apportionment. The suggestion is the County discriminates against Seegmiller based on the fact his assets are stationary rather than mobile.
 

 “‘“‘[T]ax classifications carry a presumption of constitutionality which can be overcome only by the most explicit demonstration that the classification fosters hostile and oppressive discrimination against particular persons or groups.’ [Citation.]” ’ ”
 
 (Park ’N Fly of San Francisco, Inc.
 
 v.
 
 City of South San Francisco
 
 (1987) 188 Cal.App.3d 1201, 1213 [234 Cal.Rptr. 23].) “[T]he party who challenges the constitutionality of a legislative classification scheme in a tax statute bears a very heavy burden. . . . . Tax statutes are generally not subjected to close scrutiny, and distinctions can be justified on the basis of administrative convenience and promotion of legitimate state interests. [Citation.]”’
 
 (Cohan
 
 v.
 
 Alvord
 
 (1984) 162 Cal.App.3d 176, 181-182 [208 Cal.Rptr. 421].)
 

 As demonstrated earlier, personal property continuously in interstate transit, unlike stationary property with a permanent home, has multiple
 
 *1404
 
 tax situses in any given year, requiring apportionment as a matter of constitutional imperative. Because the tax classification is rationally based on the qualitatively different character of the two forms of property, the state’s disparate treatment does not offend the equal protection clause.
 

 “The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more
 
 similarly situated
 
 groups in an unequal manner.”
 
 (In re Eric J.
 
 (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549], original italics.) The doctrine “does not require things which are different in fact or opinion to be treated in law as though they were the same.”
 
 (Tigner
 
 v.
 
 Texas
 
 (1940) 310 U.S. 141, 147 [60 S.Ct. 879, 882, 84 L.Ed. 1124, 1128, 130 A.L.R. 1321].)
 

 Disposition
 

 The judgment is affirmed.
 

 Puglia, P. J., and Sims, J., concurred.
 

 [1]
 

 In his brief, Seegmiller alleges that he also paid property taxes assessed by the County of Washoe, State of Nevada, in the 1994-1995 tax year based upon the fact the assets of Truckee Precision were located in that county as of that state’s lien assessment date. This fact has not been pleaded and is not properly before us. Whether or not such taxes were paid however, has no bearing on our decision.
 

 [2]
 

 At the time of the events giving rise to this suit, Revenue and Taxation Code section 2192 provided for a lien date of March 1 preceding the fiscal year in which the tax was levied. (Stats. 1967, ch. 818, §5, p. 2244, operative Jan. 1, 1968.) The statute has since been amended so that tax liens now attach annually as of January 1 of the preceding year. (Stats. 1995, ch. 499, § 18.)
 

 [3]
 

 As the County points out, the presence of the property on a fixed lien date as a measurement for determining its taxability works both in favor of and against the taxpayer. For example, if he had moved his inventory into Nevada County on the day after the lien date, Seegmiller would have been able to operate for almost a full year before incurring any tax liability.