**KENAI PENINSULA BOROUGH,**
Petitioner,

v.

Kenneth ARNDT, Respondent.

No. S–7776.

Supreme Court of Alaska.

May 22, 1998.

Joseph K. Donohue, Preston Gates & Ellis, Anchorage, and Robert J. Molloy, Molloy & Landry, Kenai, for Petitioner.

No appearance by Respondent.

Before COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

BRYNER, Justice.

The Kenai Peninsula Borough sued to collect a full year's tax on the assessed value of a locally-harbored vessel. The borough had charged the tax to the registered owner of the vessel as of its assessment date—the first day of the tax year—but the owner sold the vessel several months after assessment and refused to pay. The superior court ruled that the Federal Constitution's Due Process and Commerce Clauses required reduction of the tax to reflect the vessel's post-assessment sale and its departure from borough waters. We reverse, holding that the vessel's tax status became fixed for the full tax year on the date of its assessment and that the Constitution requires no adjustment for post-assessment changes.

## I. FACTS

In 1987, Kenneth Arndt (Arndt) paid $585,000 to buy the *M/V Krystal Sea*, a 134–foot, 187–gross–ton vessel. Arndt registered the *Krystal Sea*'s home port in Homer, within the Kenai Peninsula Borough (the KPB or the borough). From November 1989 to May 1991, the *Krystal Sea* was under charter to Underwater Construction, Inc., (UCI) an Anchorage company. Although the *Krystal Sea* spent part of its chartered time outside the KPB waters, it remained registered to Arndt in Homer, worked out of the Homer harbor part of the time, and was kept in the harbor when not actively working.

It is undisputed that the *Krystal Sea* was moored in the Homer harbor on January 1, 1991, and that it had an established tax situs in the KPB on that date. The *Krystal Sea* remained at harbor through March and worked out of Homer during April and early May. On May 19, UCI exercised an option to buy the *Krystal Sea* from Arndt for $850,000. UCI then took the vessel to Anchorage, Seattle, and the South Pacific for the remainder of the year.

In February 1991, three months before selling the *Krystal Sea* to UCI, Arndt filed a 1991 personal property tax statement with the KPB identifying himself as the vessel's owner. Arndt added a handwritten note indicating that he would be selling the vessel; he requested the borough to send UCI the tax bill. After informing Arndt that it could not bill UCI without a copy of the documents transferring title, the borough sent him a notice appraising the *Krystal Sea* at $468,-000. Soon after selling the *Krystal Sea*, Arndt sent a copy of the bill of sale to the KPB and again requested the borough to send UCI the tax notice. However, the KPB notified Arndt that he remained responsible for paying the full amount of the 1991 tax, and in July the KPB sent Arndt a tax bill for $7,394.40.

Arndt failed to pay the bill. In April 1992 the KPB filed suit in the district court to collect the delinquent taxes. In response, Arndt denied owning the *Krystal Sea* and

asserted that the KPB's efforts to tax him were "unconstitutional and illegal." Arndt contended that his sale of the vessel to UCI required the 1991 tax to be apportioned. He further claimed, however, that because the KPB's ordinances contained no express provision authorizing apportionment, the borough lacked apportionment power. Arndt thus maintained that he owed the KPB nothing.

The district court rejected Arndt's arguments and entered summary judgment against him. Arndt appealed to the superior court, which reversed the district court on constitutional grounds. Relying on the Due Process Clause, the superior court ruled that, regardless of where the *Krystal Sea* was taken after Arndt sold it in May 1991, the KPB violated the Federal Constitution by holding Arndt "liable for taxes accrued on property after he had relinquished all of his ownership interest." Alternatively, relying on the Commerce Clause, the court ruled that, because the *Krystal Sea* "severed its ties to the KPB and the State of Alaska" in May 1991, the KPB "was without constitutional authority to levy a tax on [Arndt] or the new owner." After finding that the KPB had inherent authority to apportion taxes when constitutionally necessary, the superior court remanded to the district court for entry of judgment in an amount reduced to reflect the portion of 1991 during which Arndt actually owned the *Krystal Sea*.

Following the district court's entry of an amended judgment apportioned in accordance with the superior court's directive, and after a renewed appeal in which the superior court affirmed the amended judgment with only minor alterations, the KPB petitioned this court for a hearing to review the superior court's rulings. *See* Alaska R.App. P. 301(b). We granted the petition and ordered briefing on the merits.[1]

## II. DISCUSSION

 The outer limits of the KPB's power to tax personal property are defined by the United States Constitution's Due Process and Commerce Clauses.[2] Due process re-

---

1. Arndt did not respond to the petition and has declined to file a brief on the merits.

2. U.S. Const. amend. XIV, cl. 1 and art. I, § 8, cl. 3.

quires a minimal nexus between the borough and the property it taxes. *See Braniff Airways v. Nebraska State Bd. of Equalization &· Assessment*, 347 U.S. 590, 599–600, 74 S.Ct. 757, 98 L.Ed. 967 (1954); *Gulf Oil Corp. v. State, Dep't of Revenue*, 755 P.2d 372, 383 n. 33 (Alaska 1988). "So far as due process is concerned the only question is whether the tax in practical operation has relation to opportunities, benefits, or protection conferred or afforded by the taxing State." *Ott v. Mississippi Valley Barge Line Co.*, 336 U.S. 169, 174, 69 S.Ct. 432, 93 L.Ed. 585 (1949). *See also Sjong v. State, Dep't of Revenue*, 622 P.2d 967, 970 (Alaska 1981) (holding that the due process question turns on " 'whether the state has given anything for which it can ask return' ") (quoting *Wisconsin v. J.C. Penney Co.*, 311 U.S. 435, 444, 61 S.Ct. 246, 85 L.Ed. 267 (1940)).

■ However, "the Due Process Clause [does not] confine the domiciliary State's taxing power to such proportion of the value of the property being taxed as is equal to the fraction of the tax year which the property spends within the State's borders." *See Central R.R. Co. v. Pennsylvania*, 370 U.S. 607, 612, 82 S.Ct. 1297, 8 L.Ed.2d 720 (1962). Rather, due process only bars taxation of personal property that is permanently situated outside the taxing jurisdiction. *See id.; Union Refrigerator Transit Co. v. Kentucky*, 199 U.S. 194, 202, 26 S.Ct. 36, 50 L.Ed. 150 (1905) (finding that due process is violated by taxation of property "wholly within the taxing power of another state").

■ To the limitations imposed by due process, the Commerce Clause adds only one dimension: "an additional requirement that the tax not discriminate against interstate or foreign commerce." *Gulf Oil Corp.*, 755 P.2d at 383 n. 33. *See also Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 444–45, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979). "It is only multiple taxation of interstate operations that offends the Commerce Clause." *Central R.R. Co.*, 370 U.S. at 612, 82 S.Ct. 1297 (citations and internal markings omitted). Hence, the Commerce Clause is triggered only upon an affirmative showing that property taxed by one jurisdiction has anoth-

er taxable situs and ·could be taxed elsewhere: "[T]he burden is on the taxpayer who contends that some portion of its total assets are beyond the reach of the taxing power of its domicile to prove that the same property may be similarly taxed in another jurisdiction." *Id.* at 613, 82·S.Ct. 1297.

■ It is undisputed that the *Krystal Sea*'s primary tax situs was within the KPB when the vessel was assessed on January 1, 1991. It is also undisputed that Arndt did not prove that the vessel could be taxed by some other jurisdiction in 1991, the tax year in question. The superior court nonetheless concluded that due process required apportionment of the 1991 tax because, after May 19, 1991, Arndt no longer owned the *Krystal Sea*. The court further concluded that the Commerce Clause required apportionment because the vessel's new owner had removed it from the KPB and because Arndt should not be burdened with proving the *Krystal Sea*'s new tax situs.

In reaching these conclusions, the superior court relied on the assumption that Arndt's tax liability for 1991 "accrued" day by day throughout the year. A review of the KPB's personal property taxation process, however, reveals this assumption to be mistaken.

The KPB's taxation process is controlled by a mix of Alaska and borough law. Under AS 29.45.240(a),. the KPB is empowered to "assess, levy, and collect a property tax ... by means of an ordinance." The KPB assessor must "assess property at its full and true value as of January 1 of the assessment year," AS 29.45.110(a), and is authorized to "require each person having ownership or control of or an interest in property to submit a return ... based on property values ... existing on January 1" of any given tax year. AS 29.45.120(a). Based on the authority conferred by these statutes, Kenai Peninsula Borough Ordinance (KPBO) 05.12.120 provides for all personal property within the borough's limits to be taxed at a rate of "not more than 8 mills on the assessed valuation." [3] Kenai Peninsula Borough Resolution (KPBR) 77–11 specifies January 1 as the date for determining the presence of property in the borough: "All personal property

---

**3.** Also, in accordance with applicable state statutes, the KPB has adopted an ordinance requir-

ing its assessor, by January 1 of each year, to mail personal property assessment forms to all

which is located within the Kenai Peninsula Borough on January 1st of any tax assessment year is subject to the tax if the property has a tax situs within the borough."[4] Pursuant to AS 29.45.300, "[t]he owner of assessed personal property is personally liable for the amount of taxes assessed against the property." This statute is mirrored by KPBO 05.12.120, which provides that "the owner [of property] shall be liable for payment of the tax."

These provisions expressly require the value of property to be set as of the assessment date each year, January 1. AS 29.45.110(a); AS 29.45.120(a); KPBR 77–11. They also designate January 1 as the relevant date for determining the property's tax situs—its location within the KPB. AS 29.45.120(a); KPBR 77–11. And they specify that the owner of the property on that date is the one "personally liable" for payment of the tax. AS 29.45.300; KPBO 05.12.120. Thus, when read together, these provisions describe a system of property taxation in which the principal attributes of tax status—value, situs, and ownership—are determined as of January 1 each year and remain fixed throughout the year that follows. Because tax status, once determined under these provisions, in turn determines each year's levy, it follows that the KPB's property tax itself becomes fixed each year as of the date of assessment. The tax "accrues" in full each year on January 1.

A tax system structured in this manner offends neither due process nor the Commerce Clause. The system neither eliminates nor dilutes the need to establish a valid tax situs—a nexus between the borough and the property ensuring that "the tax in practical operation has relation to opportunities, benefits, or protection conferred or afforded by the taxing State." *Ott v. Mississippi Valley Barge Line Co.*, 336 U.S. 169, 174, 69 S.Ct. 432, 93 L.Ed. 585 (1949). Rather, by demanding evidence of a nexus already established at the time of assessment, the system necessarily focuses on opportunities and benefits conferred in the year preceding assessment.[5]

A retrospective focus of this kind is not in itself a cause of constitutional concern:

There is no talismanic quality or significance of constitutional dimension in the 'tax year' such that absence from the State of personal property all during that year should automatically invalidate an assessment denominated 'for' that year but statutorily based upon location in the State of property upon a certain date preceding, but not unduly remote therefrom, and reasonably referable to that year.

Tax situs means the place where an item of personal property is located. Tax situs can be based on the residence and domicile of the owner, or whether the property in question is taxed by another taxing government, or the fact of its physical location within the borough on January 1st of any tax assessment year.

---

persons known to own personal property in the borough. KPBO 05.12.140. Another ordinance, KPBO 05.12.180, requires all owners of property in the borough to file returns by February 15. State law requires that upon return of the assessment forms, the KPB assessor must "assess property at its full and true value as of January 1 of the assessment year." AS 29.45.110(a). The assessor must then prepare an assessment roll that describes all taxable property, identifies all persons "with property subject to assessment and taxation," and lists the property's assessed value. Former AS 29.45.160(a) (effective at the time relevant here). Notice of this assessment must be sent to each person named on the roll. Former AS 29.45.170 (also effective at the time relevant here). By June 1—after allowing time for correction and appeal of the assessments, *see* AS 29.45.180–.210—the assessor must certify a final roll. AS 29.45.210(c). Based on the certified roll, the KPB is charged with determining a rate of levy by June 15; it must then mail tax statements by July 1. AS 29.45.240(b).

4. Determining whether property has a tax situs within the KPB is also governed by KPBR 77–11, which provides, in relevant part:

5. *See, e.g., City of Bayonne v. International Nickel Co.*, 104 N.J.Super. 45, 248 A.2d 547, 551 (N.J.Super.App.Div.1968) (citing *D.L. & W.R. Co. v. Pennsylvania*, 198 U.S. 341, 25 S.Ct. 669, 49 L.Ed. 1077 (1905), for the proposition that "the critical time for determining whether the property is constitutionally untaxable by the state because absent is the time as of which the statutory appraisal is to be made (in other words, the assessing date)"); *Seegmiller v. County of Nevada*, 53 Cal.App.4th 1397, 62 Cal.Rptr.2d 238, 241 (1997) (reasoning that "[t]he tax lien date [California's equivalent of the assessment date] ... is simply a practical method for determining that the taxpayer enjoyed the benefit of governmental services during the year preceding the assessment").

*City of Bayonne v. International Nickel Co.,* 104 N.J.Super. 45, 248 A.2d 547, 553 (N.J.Super.App.Div.1968).[6]

Nor does the retrospective nature of the KPB's system appreciably enlarge the danger of arbitrary or multiple taxation. The KPB's failure to adjust current taxes for changes in status occurring during the year of assessment creates no risk of unfairness to a taxpayer who remains in the borough, since these post-assessment changes will be captured and taken into account when the KPB assesses for the next tax year. The KPB's system likewise creates no increased risk of multiple taxation for property that moves from year to year within Alaska, since, as we have seen, the KPB's retrospective property tax approach is largely a creature of Alaska law and must thus be applied uniformly throughout the state.[7]

█ Moreover, insofar as the Commerce Clause is a matter of concern, the KPB's system creates no added risk of multiple taxation beyond the state's borders, because a similar approach to taxation of personal property prevails nationwide: "The well-nigh universal rule in this country is that the tax status and value of property is set for the entire fiscal year on the assessment date." *Appeal of Title Serv., Inc.,* 433 Pa. 535, 252 A.2d 585, 587 (1969).[8] The proposition thus appears widely settled that post-assessment changes in value, situs, and ownership of taxed property require no change in tax for the corresponding assessment year.[9]

Accordingly, apportionment of Arndt's 1991 tax for the *Krystal Sea* was not necessary to avoid an unconstitutional taking of Arndt's property or to prevent the possibility of multiple taxation. Arndt's ownership of

---

**6.** *See also Seegmiller,* 62 Cal.Rptr.2d at 242 (concluding that "[s]ince the tax levy corresponded to the benefits of governmental services enjoyed as of the tax lien [assessment] date, the timing of Seegmiller's exit from the state was, for due process purposes, irrelevant. A fortiori, no 'proration' was required for the following year"). *Cf. Central R.R. Co. v. Pennsylvania,* 370 U.S. 607, 612, 82 S.Ct. 1297, 8 L.Ed.2d 720 (1962) (holding that "the Due Process Clause [does not] confine the domiciliary State's taxing power to such proportion of the value of the property being taxed as is equal to the fraction of the tax year which the property spends within the State's borders").

**7.** An example of this uniformity may be gleaned from *North Slope Borough v. Puget Sound Tug & Barge,* 598 P.2d 924 (Alaska 1979). There we approved the North Slope Borough's assessment of a prorated property tax on barges with a home port outside the borough that arrived in Barrow around August 1, 1975, became icebound, and remained in borough waters until the following spring. *Id.* at 925–26. Our opinion in *North Slope Borough* indicates that the barges were assessed a prorated value of 5/12ths of their fair market value, reflecting five months' presence in the borough. *Id.* at 926. Although our opinion makes no mention of the specific months that were taxed or the year of taxation, the briefs filed by the parties in that case make it clear that the barges were assessed by the North Slope Borough in the tax year 1976 based on their presence in the borough during five months—August through December—of 1975, the year *preceding* taxation. *See* Appellees' Brief, S–3858 at 26–29 (filed June 26, 1978); Reply Brief of Appellant

and Brief of Cross Appellant, S–3858 at 12 (filed August 1, 1978).

**8.** *See also City of Bayonne,* 248 A.2d at 550–52 (discussing numerous cases); *accord Seegmiller,* 62 Cal.Rptr.2d at 241–42.

**9.** *See, e.g., City of Bayonne,* 248 A.2d at 550–52; *Seegmiller,* 62 Cal.Rptr.2d at 241–42; *Long Island Power Auth. v. Shoreham Wading River Ctr. Sch. Dist.,* 88 N.Y.2d 503, 647 N.Y.S.2d 135, 670 N.E.2d 419, 422 (1996) (holding that "ownership of real estate on the taxable status date determines whether the property is subject to real property taxation for the entire ensuing taxable year, irrespective of the property's subsequent acquisition by a tax-exempt entity during that taxable year"); *City of Fayetteville v. Phillips,* 306 Ark. 87, 811 S.W.2d 308, 311 (1991) (finding no tax exemption under statutory exemption for "public property ... used for public purposes" where construction of arts center was proposed on tax assessment date but not begun, even if intent was to eventually have exclusively public use); *Thomas Dodge of Highland, Inc. v. State Bd. of Tax Comm'rs,* 542 N.E.2d 245 (Ind.Tax 1989) (setting taxable inventory on assessment date); *Bethany Baptist Church v. Deptford Township,* 225 N.J.Super. 355, 542 A.2d 505, 507 (N.J.Super.App.Div.1988) (concluding that "property used for a nonexempt purpose on ... the assessment date, which is later transferred to an exempt owner, is nevertheless subject to taxation for the succeeding tax year"); *First Nat'l Bank v. Mid–Central Food Sales, Inc.,* 129 Ill. App.3d 1002, 85 Ill.Dec. 4, 473 N.E.2d 372, 374 (1984) (holding owner of real property on January 1 of any year shall be liable for taxes of that year). *See generally* 2 A.L.R.4th 432, 438 (1980).

the *Krystal Sea* on January 1, 1991, the vessel's tax situs within the KPB on that date, and its value at the time are firmly established by record evidence and were never seriously disputed. Because Arndt became personally liable for the full 1991 tax based on the *Krystal Sea*'s tax status on January 1, 1991, and because he failed to allege or show circumstances indicating any actual danger of multiple taxation, his post-assessment transfer of the vessel and its post-transfer departure from the borough are irrelevant for purposes of the 1991 tax.[10]

### III. CONCLUSION

We thus conclude that the superior court erred in reversing the district court's original judgment granting summary judgment to the KPB.[11] Accordingly, we VACATE the superior court's appellate rulings and REMAND the case to the district court with directions to reenter judgment for the KPB in accordance with this opinion.

MATTHEWS, C.J., not participating.

---

10. In an affidavit submitted to the district court, Arndt asserted without elaboration that when he purchased the *Krystal Star* (apparently another vessel) from General Electric, its prior owner, the KPB "taxed me for the value of the boat, not General Electric," and that this occurred even though General Electric sold him the vessel in Seattle. Since Arndt fails to specify whether the KPB attempted to tax him in the year of purchase or in the subsequent tax year, his concluso-ry assertions, even if accepted, would not raise an inference of double taxation.

11. Our resolution of the constitutional issues in this case makes it unnecessary to decide whether the superior court erred in reversing the district court's alternative conclusion that Arndt's constitutional arguments were barred by his failure to exhaust the administrative remedies that were available for challenging the KPB's assessment.